P. S. FAGAN *et al.*

*v.*

THE CITY OF CHICAGO.

1. SPECIAL ASSESSMENT — *trial of objections — practice.* On objections being filed to the report of commissioners, in assessing benefits and damages, the statute does not contemplate a separate trial as to each objector, but that all shall be tried as one case, by the same jury.

2. SAME—*benefit to public irrelevant.* On the trial of objections to the confirmation of special assessments for extending and opening a street, it is wholly irrelevant and immaterial what proportion of the total cost would benefit the public, and a question designed to elicit an opinion in this respect is properly refused.

3. The statute gives cities, towns and villages exclusive power to determine whether a proposed public improvement shall be made by special assessments, special taxation of contiguous property or by general taxation, and the courts have no power to interfere with the exercise of this discretion.

4. On application to confirm special assessments of benefits for a proposed improvement, it does not matter whether the benefits to the property assessed are equal or more than half equal to the cost of the improvement.

5. SAME—*what to be tried on confirmation.* On application to confirm special assessments of benefits, the issue to be tried by the jury is, whether the objector is assessed more or less than his premises will be benefited, or more or less than his proportionate share of the cost of the improvement, and the jury are also required to find the amount the premises should be assessed.

6. SAME—*evidence on confirmation.* On the trial of objections to confirming a special assessment for a street, the objectors asked a witness within what limits, in his judgment, the assessment for special benefits by the improvement should have been confined: *Held,* that the question was

too general, and should have been specific as to whether certain lots were benefited, and if so, how much, and thus ascertain the extent of benefits, and at the same time the relative benefits which they received to that of other lots.

7. In the same proceeding, the objectors asked a witness whether any property beyond a certain street was specially benefited by the improvement. The court offered to allow the question if limited to specific pieces of property, which was declined: *Held*, that the court did not err in refusing the question.

8. SAME — *United States property omitted from assessment.* Property owned by the government is never taxed, unless expressly required by statute. It was objected to an assessment of benefits for public improvements, that property owned by the United States, used as a custom house, post office, etc., and benefited, was not assessed: *Held*, that such property was properly exempted. The States have no power to tax the instrumentalities of the general government.

9. SAME—*statute does not authorize assessments of public property.* A fair construction of the statute authorizing special assessments for public improvements by cities and villages, does not contemplate the exercise of the power to assess benefits upon property of either the State or the United States.

10. SAME—*evidence as to proportion of benefits assessed.* On a proceeding to confirm a special assessment of benefits for a public improvement, a party objecting will not be allowed to show that his lot has been assessed more than another particular lot. The witnesses should be confined to a comparison of the assessments objected to on a particular lot with the general assessment against all the other lots, the real question being, whether the particular lot is over or under assessed in proportion to the general assessment.

11. SAME—*omission to condemn property.* In a proceeding to assess benefits by the opening of a street, it is no valid objection that a part of a lot in the line of the proposed street was not condemned by the city authorities.

12. SAME—*burden of proof.* The burden of proof rests upon a city, in a proceeding to assess benefits from the opening of a street, to show that the assessment is right; but the report of the commissioners is *prima facie* evidence that it is right, and then the burden of proof to show its incorrectness is shifted to the objectors, and they must show, by a preponderance of evidence, that one or more of the lots assessed was assessed more or less than its proportionate share of the cost of the improvement.

13. SAME—*damages by taking alley for a street.* The taking of an alley for the purpose of opening a street in its place can not be said to damage lots abutting on the same, as the street will furnish the same access to the lots as the alley.

14. SCHOOL PROPERTY—*condemning for street—damages properly allowed.* As the city of Chicago holds the legal title of school property in trust for educational purposes, and not for general municipal purposes, it is proper and right, in a proceeding to lay out and open a street over such property, to assess damages for the property so taken.

15. EVIDENCE—*court not bound to decide upon its effect in advance.* Where evidence is offered, the court is not bound to decide what effect shall be given to the same at a subsequent stage of the trial.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. McDAID & WILSON, and Mr. WILLIAM HOPKINS, for the appellants.

Messrs. TULEY, STILES & LEWIS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

An ordinance was duly passed by the city council for the purpose of extending Dearborn street from its intersection with Jackson street to Twelfth street, in Chicago. Application was made to the Superior Court of Cook county for the appointment of commissioners, pursuant to the requirements of the statute, to make an assessment of the benefits and damages which would be sustained by opening the street. The commissioners were duly appointed, and made and returned their report to the court. Thereupon, appellee moved for a confirmation of the report, when a jury were impanneled to hear the evidence and correct the report for confirmation. The jury found a verdict, and, after overruling a motion for a new trial, the court rendered a judgment of confirmation, and this appeal is prosecuted.

It is stipulated that no question shall be raised as to the sufficiency of the evidence to sustain the verdict. This, then, only leaves questions of law to be discussed and disposed of by the court.

The assessment embraced a large number of lots and parts of lots, and there were over one hundred persons who filed objections to the report of the commissioners, as to the assess-

ment of their lots; and it is urged that the court below erred in refusing to order separate trials on the objections filed to the assessment of each lot. The 138th section of the act relating to cities and villages (Rev. Stat. 1874, page 235,) provides for the appointment of the commissioners to make and report the assessment. The 140th section provides for its return, the 141st for notice, and the 145th for the trial by jury after return and notice, and, also, that the hearing shall be conducted as other cases at law, and if the premises of the objector are assessed more or less than they will be benefited, or more or less than their proportionate share of the cost of the improvement, the jury shall find the amount the premises should be assessed, and judgment shall be rendered accordingly.

From these several provisions, it appears that the statute designs that the whole proceeding shall be treated and considered as but one. No one would contend that, in the first instance, the court should appoint a separate and distinct set of commissioners to assess each lot to be affected by the opening of a street. All would see at a glance that such a course would be wholly impracticable. It would inevitably defeat the purpose of the law, by preventing the opening of streets, however much the public necessities might demand it; and to impannel a separate jury to try the objections filed to the assessment of each lot, would produce the same result. Each of such trials would necessarily involve an inquiry into the assessment of every lot, to ascertain whether it bore a due proportion to the assessment of the others. If such trials were allowed, and each were to consume the time occupied by this, it would require many years to dispose of the whole assessment.

But the 148th section, we think, does not leave a doubt. It provides that " the judgment of the court shall have the effect of a several judgment as to each tract or parcel of land assessed, and any appeal from such judgment, or writ of error; shall not invalidate or delay the judgment, except as to the property concerning which the appeal or writ of error is taken."

No language could, to our minds, render it plainer than that it was the intention that the whole assessment and all the objections should be tried by one and the same jury.

Waiving the question, whether the objectors have, in this case shown such an interest in the lots as to entitle them to file and insist on objections, we shall proceed to the consideration of the questions presented and discussed; and first, did the court below err in excluding proper evidence offered by appellants?

A witness was asked, what proportion of the total cost of the improvement would, in his opinion, be of benefit to the public. This question was wholly irrelevant. The court was not trying, nor was it authorized to try, what, if any, benefit the improvement would confer on the public. That was a question which belonged to the city government to determine, and could not be reviewed by the Superior Court. The statute, by the 116th section, provides: "That the corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment, or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall by ordinance prescribe." The 117th section provides: "When any such city or village shall, by ordinance, provide for the making of any local improvement, it shall, by the same ordinance, prescribe whether the same shall be made by special assessment, or by special taxation of contiguous property, or by general taxation, or both." Here, the full power of determining in what mode the improvement shall be made, is vested in the corporate authorities. On this question, it contemplates no review of their action. This is purely within their discretion, free from any power anywhere to review their determination. The statute has not conferred, if it could, the power on the courts, through the action of a jury, or otherwise, to say which mode shall be adopted to make the improvement. If the sum could not be raised by the assessment of special benefits, then the question would recur, whether the public benefits would require that the balance should be raised by general taxation, and that question is

addressed to the corporate authorities, and not to the court or the jury trying the case. It is, therefore, clear that the court below did right in not permitting the question to be answered, and thus raise an immaterial issue.

The provision of the 145th section of the act, that either party may introduce such evidence as may tend to establish the right of the matter, must be understood and limited by the language which follows and declares what the jury shall try and determine. Only such evidence can be heard as is pertinent to the issues formed by the statute, and as establishes the right of the matter under these issues.

The same witness was asked the question, whether, in his judgment, property could be found within the corporate limits specially benefited by the improvement equal to one-half of its cost. Under the issues in the case, it was not a matter of any consequence whether benefits to the property were equal or no more than half equal to the cost of the improvement. Whether it was one or the other, did not, nor could it, change the amount that property should be assessed for benefits. If the benefits were equal to the cost, then the improvement would have been made by assessments. If but half, then, if made at all, it would be, one-half by assessment and the other half by general taxation; and the 145th section of the act (Rev. Stat. 1874, page 236,) has formed the issue to be tried by the jury. It is, whether the objector is assessed more or less than his premises will be benefited, or more or less than his proportionate share of the cost of the improvement, and they are also required to find the amount the premises should be assessed. See *Guild* v. *The City of Chicago,* 82 Ill. 472. The answer to this question could have shed no light on the issue being tried.

This question was asked of the same witness: "Within what limits, in your judgment, should the assessment for special benefits by this improvement have been confined?" And whether any property south of Twenty-second street was specially benefited by the improvement. The court held that the first of these questions was embraced in the previous ques-

tion, as to whether property benefited could be found to pay for half the improvement. If the witness supposed that half the amount of the cost could not be raised by benefits, he would, no doubt, suppose the assessments should not extend half so far from the line of the improvement. The question was too general, and should have been specific as to whether certain lots were benefited, and if so, how much, and thus ascertain the extent of benefits, and, at the same time, the relative benefits which they received to that of other lots.

As to the last question, as to benefits to property south of Twenty-second street, the court offered to permit the question if it should be limited to specific pieces of property, but this was declined by objectors. In this we see no error. The questions should be confined to the issue.

It is also urged, that block 121, School section addition, owned by the United States government, should have been assessed. We apprehend that no rule is more uniformly recognized than that property of government is never taxed, unless expressly required by statute. It would only be to pay money from the treasury to be returned thereto. It could be of no kind of benefit. It would be entirely useless, and hence the government never requires such an act to be performed. Nor under our system of government can the States tax the general government, its agents or property, nor can the general government tax the States, their agents or property. See *McCulloch* v. *Maryland*, 4 Wheat. 316, *Osborn* v. *The Bank of the United States*, 9 id. 738. In these cases it was held that the States have no power to tax the instrumentalities of the general government employed in the performance of its proper functions.

In the case of *Dobbins* v. *Commissioners of Erie county*, 16 Peters, 447, it was held that there was a limitation on the taxing power of a State, which prohibits it from taxing the instruments, emoluments and persons which the United States may use and employ as necessary and proper means to the exercise of their sovereign power. Now, this block of ground is used and employed by the general government for a custom

house, post office, etc., or in erecting buildings for that purpose. Now, custom houses, post offices and court houses are necessary instrumentalities, and are proper means to be employed by the general government in executing its sovereign power. This land was purchased by them for the purpose, and the State legislature gave their consent that it might be so used, and ceded to the United States jurisdiction over the same. This is, then, in its fullest sense, one of the instrumentalities employed by that government in the proper exercise of its sovereign power, and falls within the principle of those decisions. The case of *Nathan* v. *Louisiana*, 8 Howard, 82, announces the same doctrine. This property, then, could not be taxed or assessed by the State.

But it may be said that this is not strictly a tax, but is a requirement on the owner simply to pay the amount that his property is increased in value by the improvement, and does not operate as a burthen on the property. We are aware that such is the theory of these assessments, and that they differ materially from taxes; but it does not, therefore, follow, that public property may be assessed. A municipal corporation has no power to assess or exact from the State or the general government any sum for benefits conferred. The power to levy taxes or impose assessments for benefits can only be exercised on the governed, and not on the governing power, whether State or Federal. Nor does a fair construction of the statute authorizing these assessments, contemplate the exercise of such a power. The whole statute manifestly applies to individuals and individual property. It refers to persons alone, and not to either the State or general government; and it is a familiar rule of interpretation, that a law which refers to inferiors is never applied to superiors. Again, all grants are taken most favorably to the government or the public. Hence, when the power was granted to these municipal governments to make such assessments, it would not be a favorable construction to the government to hold that the assessment might be imposed on government property. Such a power can not be implied, but can only be exercised when expressly granted. No such

power was expressly granted in this statute, and hence there is no pretense for its exercise, and this block was not liable to such an assessment, and there was no error in holding it was exempt.

We see no objection to the court below confining the examination of the witnesses to a comparison of the assessments objected to, on a particular lot, with the general assessment against all of the other lots. The question being tried was, what proportion the assessment on the particular lot bore to the assessment imposed on all of the other lots, and not as to that on another specified lot. It was, whether the particular lot was over or under assessed, in proportion to the general assessment. It would seem that no person could imagine that if it could be shown that of perhaps a thousand lots assessed in this case, one was rated too low, the whole assessment should be held invalid. To so hold would be to thwart the purpose the General Assembly had in view when this enactment was adopted. Nor would it be practicable to permit each attorney, representing each objector, to examine every witness, so as to compare the assessment of the lot for which objections were filed, with every other lot assessed.

It is urged that the court below erred in refusing to permit appellants to prove, that by subdivision of lots by fraudulent conveyances, subdividing some of the lots, they were assessed too low. The court so held when the offer was made, but subsequently, on a withdrawal of the objection by the city attorney, the court informed the parties that they could have the privilege of making the proofs, but they declined to do so, unless the court would, at that stage of the proceedings, inform counsel what effect the court would give to the evidence at a subsequent stage of the trial. As well, when any item of evidence is offered, insist that the court shall inform counsel what effect is to be given to it by the instructions to the jury. The court had decided that the evidence might be introduced, and it was for appellants to offer it, if they had such evidence, or decline, as they saw proper. We can not see that this was erroneous.

It appears that a portion of some lots, held by the city in trust for public schools, were condemned and damages allowed for the appropriation of the same for streets, and it is objected that the other property holders should not be assessed to pay the city for the same. The law vests the title to school property in the city, to be held and used for school purposes. It is not held by it for general municipal purposes, but for a special purpose. Section two of the amendment of the city charter, adopted on the 13th of February, 1863, provides that nothing shall be done to impair the principal of the fund, or to appropriate the accruing interest to any other purpose than the payment of teachers in the public schools in the townships. Now, to appropriate this property to the use of the public as a street would be a perversion of the fund, and would, in violation of the statute, impair the principal of the fund. Hence there was no error in allowing damages for the appropriation of this property to another and a different use than that for which it was held by the city.

But, independent of this provision of the charter, there was no power to so appropriate this fund. It was held by the city for educational purposes, and it could not be used for the opening or repairing of streets. In the case of *The City of Chicago* v. *The People*, 80 Ill. 384, it was held that property acquired, owned and held by the city, as this is, virtually belonged to the State, in trust for school purposes, and could not be taxed. Hence the city has no power to appropriate it for opening this street, and damages were not properly assessed when thus appropriated.

This was not a proceeding to ascertain damages, but to assess benefits, and we fail to perceive how the question of damages, on condemnation of this property, could arise in this proceeding. It would, in a proceeding to condemn and assess damages, but not in this collateral proceeding.

It is urged that a strip of ground, in a triangular form, three and six-tenths inches in width at its base, was improperly included in the assessment of damages for lands condemned for the street. There is nothing to show what, if any

thing, was assessed on this strip, even if it was improperly included in the estimate.    It was necessarily trifling.    Whether a lot was three and a half inches shorter or longer could add but little, if anything, to its market value, and especially when it contracted in width until it came to a point.

It is also urged, that one foot and ninety-five hundredths of lot 19, block 130, School section addition, was not condemned, although in the line of the street.    We are at a loss to perceive in what manner this can form an objection.    If it be true, and it could have produced any appreciable difference, it was in favor of appellants, as their property escaped its proportionate share of the amount of damages that would have been allowed for the same.    So far from being any wrong to appellants, if it had the slightest effect, it was for their benefit. There is no force in this objection.

The instruction given by the court, on its own motion, is criticised by appellants.    The court, after informing the jury that the burden of proof was on the city, to show the assessment was right, but it was *prima facie* proved by the introduction of the report of the commissioners, and it was then shifted to the objectors to overcome it, by a preponderance of all of the evidence; and that unless they were satisfied, from all of the evidence on both sides, that one or more of the lots to which objections were made, had been assessed more or less than their proportionate share of the cost of the improvement, they should not change it in any case, except as to lots upon which they find the assessment, in either of those respects, unjust and inequitable.    It is insisted, that when the court informed the jury that they must be satisfied, from all of the evidence, that the assessment was wrong, the effect of the instruction was, that they must be convinced beyond a reasonable doubt.    Even if such could be held to be the primary or usual import of the word "satisfy," still, no jury of ordinary intelligence could have so understood it, in the connection in which it was employed in this instruction.

The jury were told, in the preceding part of the instruction, that they should find from the preponderance of the evidence.

Again, the fifth of appellee's instructions, which was given, informs the jury that the case should be decided on the preponderance of the evidence. Hence it would seem wholly improbable that the jury could have been misled by the use of the expression to which exceptions are taken.

From what we have already said, it will be seen that the first of appellee's instructions was correct and properly given, as it stated what was the issue made by the statute and then being tried.

Appellants' instruction, refused by the court, in reference to a portion of the lots being damaged by being deprived of the use of an alley, had no evidence on which to base it, and was, therefore, properly refused. The evidence showed that the street to be opened would include the alley within its limits. If so, nothing is plainer than the property owners would still have the free and uninterrupted use of the same ground for the same purposes, after the opening the street, as before. We are totally unable to conjecture how the opening of a street so as to include the alley, could, in the slightest degree, injure the property holders by depriving them of the use of the alley. The street certainly accommodated them with access to their property as fully as the alley possibly could. Nor was there any error in refusing to give appellants' tenth instruction, as asked, or in modifying it. The law presumes that the jury can find the issue submitted to them, and this instruction, as asked, would have directed the jury to find the issue, if they could, from the evidence. That seems to be the substance of the instruction, and it was properly refused; as modified and given it was accurate.

These are the only questions we deem important to discuss, and we think are not well taken. To allow them would be to embarrass the city to an unreasonable extent, in making improvements urgently demanded by the public good, and in this case could serve no beneficial purpose, as it is not denied the evidence sustains the finding. Nor can we see that to allow any of the objections urged would be proper in any like case, and hence they are not allowed.

Perceiving no error in this record, the judgment of the court below must be affirmed.

*Judgment affirmed.*