THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE LEHIGH VALLEY RAILWAY COMPANY, Appellant, *v.* THE CITY OF BUFFALO, Respondent.

1. CITY OF BUFFALO — LOCAL ASSESSMENTS. The provision of section 145 of the charter of the city of Buffalo (Chap. 105, Laws of 1891) which declares that the board of assessors shall assess the amount ordered to be assessed for local improvements upon the parcels of land benefited by the improvement, in proportion to such benefit, has the effect of making the board of assessors the proper body to fix the district of assessment for local improvements.

2. CORRECTION OF ASSESSMENT. When, on a proceeding by certiorari, under section 101 of the charter of the city of Buffalo, to review an assessment for a local improvement, it appears that through inadvertence or an error of judgment on the part of the assessors property of the relator not

benefited by the proposed improvement, and, therefore, not assessable, had been included in the assessment with benefited property belonging to him which was properly assessable, and no illegality is found going to the jurisdiction of the assessors to assess the benefited property, such inclusion is to be deemed a defect which will warrant the court in sending the assessment roll back to the common council "to amend or correct it according to law," as provided by subdivision 5 of said section, instead of ordering it to be canceled as illegal.

3. LOCAL IMPROVEMENT — PROPERTY BENEFITED. On the review of a local assessment for the improvement of a stream it cannot be said as matter of law that land abutting on the stream, although above the point where the improvement terminates, is not benefited thereby, when by the removal of obstructions below, at a comparatively small expense, the extension of navigation along the land above is rendered possible.

Mem. of decision below, 86 Hun, 618.

(Submitted November 25, 1895; decided December 10, 1895.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made March 26, 1895, which affirmed an order of the Special Term, made in certiorari proceedings, declaring a local assessment for the dredging of Buffalo river, so far as it related to relator's land, illegal and void, and directing that the assessment roll be returned by the comptroller to the common council of the city of Buffalo, to annul or correct the same according to law.

The relator, appellant, contends on this appeal, in addition to its objections to the assessment roll, that, as the trial court found and decided that the assessment, in so far as it related to the relator's lands, was illegal, the same should have been canceled and annulled on such decision, and that the order made by the court returning the assessment roll to the common council to be corrected or annulled was improperly and irregularly made and should have been reversed.

The facts material to the questions discussed are stated in the opinion.

*Herbert P. Bissell* for appellant. In the levying of local assessments the only power possessed by the assessors is to determine the value of the property and then assess the amount directed by the council upon the lands which it has deter-

mined will be benefited by the improvement, in the proportion designated by the council. (Laws of 1891, chap. 105, §§ 4, 65–76, 93, 143, 145, 404, 405, 407–409.) A certiorari to review such an assessment is not confined to the grounds of complaint or objection which were presented to the board of assessors, or in the objections filed with the city clerk, and the court is authorized to take testimony upon the question of the relator's property being benefited by the improvement. (Laws of 1891, chap. 105, §§ 93, 101; Laws of 1880, chap. 269; Code Civ. Pro. §§ 2120, 2140, 2148; *Kennedy* v. *City of Troy*, 77 N. Y. 493.) The common council had no authority to direct the board of public works to enter into a contract for the doing of the work until the assessment therefor had been confirmed and delivered to the treasurer, which has never been done, the proceedings upon the assessment having been stayed by order of the court while the assessment roll was in the hands of the comptroller. (Laws of 1891, chap. 105, § 408.) The undisputed evidence shows that the relator's property is not benefited by the improvement. (63 N. Y. 300.) Even if the assessors had the right to speculate as to future benefits to be derived from the improvement, they are confined to that portion of relator's property adjacent to the Buffalo river lying between it and the Buffalo creek. (*People* v. *City of Brooklyn*, 23 Barb. 166; *Leroy* v. *Mayor, etc.*, 20 Johns. 429; *Clark* v. *Village of Dunkirk*, 12 Hun, 181; 75 N. Y. 612; *Ellwood* v. *City of Rochester*, 43 Hun, 114; 122 N. Y. 229; *Hassan* v. *City of Rochester*, 67 N. Y. 529; *Kennedy* v. *City of Troy*, 77 N. Y. 493.) The court having determined that the action of the assessors in assessing all of relator's property was illegal, so far as this particular improvement is concerned, an order in accordance with the decision should have been made that the said assessment of relator's property be canceled and annulled. (Laws of 1891, chap. 105, § 101, sub. 5.)

*Frank C. Laughlin* for respondent. The court had power to make the order appealed from, and it was all the relief

that the relator was entitled to. (Laws of 1891, chap. 105, § 101, sub. 5 ; Laws of 1891, chap. 105, § 409 ; *Trimmer* v. *City of Rochester*, 130 N. Y. 401.) The relator's lands are so located with reference to this improvement that they not only can be, but it is quite evident that they are, benefited thereby. (*In re William Street*, 19 Wend. 690 ; *L., etc., R. R. Co.* v. *Lee*, 13 Barb. 169 ; *In re Furman Street*, 17 Wend. 649 ; *People* v. *City of Syracuse*, 2 Hun, 433 ; *People ex rel.* v. *Mayor, etc.*, 63 N. Y. 291 ; *Dickson* v. *Racine*, 65 Wis. 306 ; *Chamberlain* v. *Cleveland*, 34 Ohio St. 551.) The fact that the relator's lands may be benefited by the improvement was sufficient to give the assessors jurisdiction, and their determination that the same was benefited, and the extent of benefits, is not reviewable and their return asserts the benefits and must be taken as true. (*People ex rel.* v. *Haines*, 3 T. & C. 225 ; *State of Minnesota* v. *Board of Public Works*, 27 Minn. 442–448 ; *Owners of Ground* v. *Mayor, etc.*, 15 Wend. 374, 377 ; *Le Roy* v. *Mayor, etc.*, 4 Johns. Ch. 352 ; *Le Roy* v. *Mayor*, 20 Johns. 430 ; 2 Hill, 9 ; *Ex parte Mayor of Albany*, 23 Wend. 282, 283 ; *People ex rel.* v. *Mayor, etc.*, 63 N. Y. 300 ; *People ex rel.* v. *Gilroy*, 126 N. Y. 147–157 ; *People ex rel.* v. *Lohnas*, 54 Hun, 608 ; *In re Amsterdam*, 126 N. Y. 158 ; *In re Mount Morris Square*, 2 Hill, 14 ; *In re Cruger*, 84 N. Y. 621 ; *T., etc., R. R. Co.* v. *Kane*, 9 Hun, 508 ; *Lyon* v. *City of Brooklyn*, 28 Barb. 609 ; *Hassan* v. *City of Rochester*, 67 N. Y. 536 ; *In re Broadway*, 63 Barb. 575 ; *Voght* v. *City of Buffalo*, 133 N. Y. 463 ; *Genet* v. *City of Brooklyn*, 99 N. Y. 306 ; *Bouton* v. *President, etc.*, 2 Wend. 395, 398 ; *Spencer* v. *Merchant*, 100 N. Y. 585 ; Cooley on Tax. [2d ed.] 775 ; *Osterhout* v. *Highland*, 27 Hun, 170.) The court could have denied the relator's petition without granting any relief. (Laws of 1891, §§ 75, 98, 102, 104, 116 ; *Voght* v. *City of Buffalo*, 133 N. Y. 463 ; *Morse* v. *City of Buffalo*, 35 Hun, 613 ; *Lythe* v. *City of Buffalo*, 48 Hun, 175.) The assessment proceedings stand by themselves, and there was no irregularity or invalidity with respect to ordering or making the contract, but if there had been it would not

affect them. (*Bork* v. *City of Buffalo*, 18 N. Y. S. R. 458–462.) The relator also, without previously raising the objection, contended on the argument that the common council should have determined what lands were benefited. This is untenable. (Laws of 1891, chap. 105, §§ 143, 144, 145 ; *Broezel* v. *City of Buffalo*, 6 N. Y. Supp. 723 ; *Easton* v. *Pickersgill*, 55 N. Y. 310 ; *In re W. S. A. & P. R. R. Co.*, 115 N. Y. 442; *Hennessy* v. *Volkening*, 30 Abb. [N. C.] 100 ; *People ex rel.* v. *Lohnas*, 54 Hun, 604–608 ; *Voght* v. *City of Buffalo*, 133 N. Y. 463 ; *Davies* v. *City of Saginaw*, 87 Mich. 439.)

ANDREWS, Ch. J. We think the order in this case should be affirmed, and we shall briefly consider some of the questions not referred to in the elaborate opinion of Judge GREEN at Special Term.

(1) The claim that the district of assessment should have been fixed by the common council, and not by the assessors, depends upon the provisions of the charter. It was competent for the legislature to prescribe the public agency to which this power should be committed. It could have imposed this duty upon the common council, or on a board of commissioners, or on the assessors. (*Spencer* v. *Merchant*, 100 N. Y. 585.) The charter does not in direct terms declare that the assessors are to determine the district of assessment. But we think this is the clear implication from its provisions. By section 405 of the charter (Chap. 105, Laws of 1891) the city is authorized to dredge, deepen and maintain the Buffalo river and to defray the expense out of the general fund or by local assessment. Section 143 provides that the common council shall estimate and fix the amount of money to be raised by local assessment. There is no provision that the common council shall fix the assessment district. In the absence of any indication that the assessors or other body should possess this power, it might very well be that it would reside with the common council under the grant of legislative power. But section 145 declares that the board of assessors shall assess the amount ordered to be assessed for local

improvements upon the parcels of land benefited by the work, act or improvement in proportion to such benefit. The common council under the charter are to determine what local improvements shall be made and the amount to be locally assessed therefor. But the clear implication from section 145, in the absence of any other charter provision on the subject, is that the assessors are both to fix the district of assessment and distribute the tax. The parties interested are authorized to file objections to the assessment when made, and are entitled to a hearing before the common council, and they have an opportunity in this way of having the common council pass upon the question whether the assessors erred in fixing the assessment district.

(2) The order directed that the assessment roll should be returned by the comptroller of the city to the common council to amend or correct the same according to law. The order sending back the assessment to the common council for amendment or correction was based on the finding of the court that the assessment of the relator's property was unauthorized and illegal in so far as it included the portion of its land not abutting on Buffalo river and lying south of the Buffalo Creek railroad, which portion, consisting of more than two hundred acres of land, was separated by the roadway of the Buffalo Creek Railroad Company from the portion of the relator's land, comprising about thirty acres, abutting on the Buffalo river. The court reached the conclusion that the portion of relator's land south of the Buffalo Creek railroad was so situated that it could not be benefited by the proposed improvement, and was, therefore, illegally embraced in the assessment. But the court decided that the thirty acres was properly assessable. There is in the evidence some color for the claim made in behalf of the city that the assessors in making the assessment considered only the benefit to the thirty acres, but included the whole tract in the assessment by inadvertence. It is contended in behalf of the relator that the council having decided that the assessment was illegal as to the larger portion of the land included therein, it was

the duty of the court to cancel and annul the assessment, and that it had no power to send it back for correction.

This question also depends upon the provisions of the charter.   Section 101 regulates the review on certiorari of the legality of assessments for local improvements.   The fifth subdivision of the section declares that if it is established in such proceeding that the assessment is illegal for any reason "the court may order that said assessment be canceled, and the same shall, therefore, be canceled by the comptroller or other proper officer of the city," and that "when it is alleged or established that the said assessment is irregular or defective on account of any imperfect description of the land sought to be assessed, or any defect or irregularity which can be corrected without prejudice to any of the parties interested therein or affected thereby, the court may order the assessment roll so corrected or amended, or may order that the assessment roll be returned to the common council to amend or correct it pursuant to law."   The illegality found by the court did not go to the jurisdiction of the assessors to assess the thirty acres abutting on the river included with the other property of the relator.   The so-called illegality was at most an error in judgment on the part of the assessors in including property of the relator in the assessment not benefited by the proposed improvement in connection with property belonging to the relator which was assessable.   The absolute annullment and cancellation of the assessment by reason of this mistake would relieve the relator's land which was subject to assessment from bearing its proper share of the burden.   This inequitable result is prevented by construing the inclusion in the assessment of non-assessable with assessable land as a defect, subject to correction under the fifth subdivision of section 101, and this construction should, we think, be given.

The court is authorized to send back an assessment roll, which is defective or irregular, to the common council to "amend or correct it pursuant to law."   The only authority of the common council on the subject of annulling or cor-

recting an assessment roll is contained in section 154 of the charter, which relates to the ordinary jurisdiction of the common council on the hearing of objections in the first instance. The common council are to "hear the objections and confirm the roll or amend it, or refer it back to the board of assessors to make a new assessment," and, by section 155, the board of assessors, on an assessment being sent back by the common council to make a new assessment, are required to "forthwith proceed to make a new assessment in the same manner as is provided for original assessments." We think these provisions by analogy regulate the action of the common council in case an assessment roll is returned by order of the court under section 101. It may annul the whole assessment, or send it back for a new assessment of the relator's land. It does not appear what has been done, if anything, since the making of the order appealed from.

(3) The alleged irregularity in the resolution of the common council (subsequently rescinded) to let the contract for the work at a gross sum (the aggregate of the itemized bid based upon the plans and specifications for the work) did not affect the validity of the assessment. The assessment is, under the charter, to precede the contract for the work. (Section 408.) The original resolution for letting the contract was rescinded, and a new contract was authorized for the work at a specified price per yard for rock and earth excavation in accordance with the bid.

(4) The opinion below contains an elaborate and able review of the question whether the land of the relator abutting on the river, although above the point where the improvement terminates, could be deemed benefited by the improvement. The rock in the bed of the river, below the relator's land, prevented its navigation. Above the improvement along the relator's water front on the river there was little if any rock, and at a comparatively small expense the channel can be made navigable by dredging. It certainly cannot be said as matter of law that the removal of the rock below the plaintiff's land, which makes it possible for the extension of navi-

gation of the river, at small expense, along the relator's land, will not add to its value. We concur with the reasons of the court at Special Term on this question.

There are some minor points raised in the brief of relator's counsel. We have examined them and are satisfied that they are without merit.

The order should be affirmed, with costs.

All concur.

Order affirmed.