[No. 5534. Decided September 14, 1905.]

## In the Matter of Westlake Avenue, Seattle.[1]

Constitutional Law—Encroachment on Judiciary—Legislative Functions — Municipal Corporations — Local Improvements — Special Assessment—Commissioners Appointed by Court. The act authorizing a city to initiate special assessments for local improvements which provides that the apportionment of the tax shall be made by commissioners appointed by the superior court subject to revision by the court, merely invokes the assistance of the court to correct errors and inequalities, the commissioners being agents of the city, and does not confer legislative powers on the court and is not obnoxious to Const., art. 7, § 9, providing that the legislature may vest in the corporate authorities of cities power to levy special assessments for local improvements.

[1]Reported in 82 Pac. 279.

MUNICIPAL CORPORATIONS—ASSESSMENTS FOR LOCAL IMPROVEMENTS
—WHAT LAW GOVERNS—PROPERTY SPECIALLY BENEFITED—CONTIGUITY.
Where a proceeding to levy special assessments for a local improve-
ment was commenced under an act restricting the levy to contiguous
property, and a supplemental petition was filed after the law was
changed eliminating the word "contiguous," the new law controls the
proceeding, and the levy is not restricted to contiguous property.

SAME—LUMP ASSESSMENT AGAINST PORTIONS OF LOT DIVIDED BY
ESTABLISHMENT OF NEW AVENUE—SEPARATE ASSESSMENT ESSENTIAL.
A "lump" assessment cannot be levied upon separate portions of a lot
where the parcels are separated by the new street for which the
assessment is made.

SAME—ASCERTAINMENT OF BENEFITS—MATTERS TO BE CONSIDERED—
SPECIAL USES—NATURAL AND REASONABLE RESULTS. In levying a spe-
cial assessment the commissioners must take into consideration any
special use being made of the property, or for which it was adapted,
or with reasonable probability would become so in the future, as de-
termined by natural and reasonable results, rather than fanciful
anticipations.

SAME — APPORTIONMENT BETWEEN CITY AND DISTRICT SPECIALLY
BENEFITED—DISCRETION OF COMMISSIONERS—ACTION CONCLUSIVE. In
apportioning the amount to be borne respectively by the city as a
whole, and by the benefited property, the action of the commissioners
is conclusive on the courts, in the absence of fraud, mistake of fact
or law, or arbitrary action amounting to an abuse of discretion.

SAME—SIZE OF ASSESSMENT DISTRICT—ASSESSMENT OF PROPERTY
BENEFITED OUTSIDE OF DISTRICT—DUTY OF COMMISSIONERS—DISTRICT
CREATED BY ORDINANCE—STATUTES—CONSTRUCTION. The commission-
ers are to determine the size of, and assess all benefited property
within the assessment district, and cannot be restricted to the limits
of the assessment district specified by the city council.

APPEAL—FROM CONFIRMATION OF ASSESSMENT ROLL—REVERSAL AS
TO APPELLANTS—FRUITS OF APPEAL. Under Laws 1893, p. 200, § 30,
the judgment on appeal from a local assessment can affect only the
property of the appellants, and those who did not join in the appeal
can derive no benefits therefrom.

SAME—DECISION—REMAND—COSTS. Where, on appeal from an as-
sessment by part of the owners, the cause is reversed and a new
assessment ordered as to the appellants' property and other property
not assessed, the costs of the appeal should be taxed against the
city, and the costs of the former and the new assessment should be
charged against the property to be reassessed.

Appeal from an order of the superior court for King county, Griffin, J., entered September 12, 1904, after a hearing on the merits confirming an assessment roll made by commissioners appointed to levy a special assessment upon property specially benefited by a municipal improvement. Reversed.

*Peters & Powell, Shepard & Lyter, Tucker & Hyland, Thomas T. Littell,* and *Piles, Donworth, Howe & Farrell,* for appellants.

*Scott Calhoun* and *Elmer E. Todd,* for respondent.

Root, J.—By ordinance No. 7,733, approved February 13, 1902, the city council of the city of Seattle determined to extend and establish Westlake avenue, and created a local improvement district of property to be specially benefited thereby, said district to be assessed to pay for the property taken or damaged in establishing and extending said avenue. In accordance with this ordinance, condemnation proceedings were instituted under the city's power of eminent domain, and compensation awarded for the taking and damaging of private property thereby.

To determine the benefits to be derived, and to assess the same, the court appointed three commissioners, who returned an assessment roll December 1, 1903, which roll included the property inside, as well as considerable property lying outside, of the limits of the improvement district prescribed by the city council in said ordinance. Upon motion, the court set aside this roll, and appointed a new board of commissioners to prepare another roll. The second board was directed by the court to assess only the property contained in the improvement district established by the city ordinance aforesaid. Two of the members of the former board were appointed upon the new board with one other member. The second board returned another assessment roll covering only property within the district as described in the ordinance.

The total amount of the assessment was $206,000, of which about $20,000 was assessed to the city as a whole. The total above mentioned contained an item of $5,000, which was the estimated cost and expense incurred in preparing the first assessment roll. The improvement was intended to afford a more convenient access from the northern part of the city to the business center, and to establish an avenue upon which the commercial business of the city might readily be extended.

From the evidence of the commissioners, it appears that all of the property covered by the first assessment roll was specially benefited. It appears that most of the property included in the first roll, and much included in the second, is not property abutting upon Westlake avenue, and is not "contiguous," as that term is ordinarily understood, some of said property being nearly or quite a half a mile distant from said contemplated improvement. The assessment roll returned by the second board was, after some modifications, ratified by the superior court. From this order of confirmation, appeals are taken by several property owners affected thereby. These appeals were heard, and have been considered, together. Various contentions are made as to the asserted illegality of said order and the proceedings leading up thereto.

*Constitutionality.*—First, it is submitted that the statute under which the assessment was made is unconstitutional, in that it assumes to authorize an assessment by the court. Art. 7, § 9 of our constitution, provides:

"The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited."

It is contended that this authority vests in the city the power to make such assessments, and that said power cannot be delegated to a court.

"While statutes authorizing courts to assess taxes are generally unconstitutional, yet those authorizing the exercise of a certain supervision and also the assessment of certain taxes are often regarded as valid." 8 Cyc. 836 B.

The city, and not the court, is authorized to take the initiative in the matter of such improvements and the assessments to pay therefor. It was the legislative power of the city, exercised by its council, that occasioned the imposition of the assessment. The state legislature gave the city the authority to levy such a tax. It provided the method by which it should be done. By this plan, the apportionment of the tax to the various parcels of property is made by a board of commissioners appointed by the court. These commissioners, by operation of law, become, in effect, officials or agents of the municipality for the performance of this service. Upon the completion of the commissioners' work, it may be called in question by any interested person before the court, which is vested with revisory powers. The function of the court in these proceedings is to settle disputes and to correct errors and inequalities called to its attention, and thereby relieve the assessment of any lack of uniformity or other injustice. That the act of the legislature invokes the assistance of the court to obviate errors in, and facilitate the accomplishment of, a special assessment, does not, in our opinion, render the statute obnoxious to the constitution. *Lake v. Decatur,* 91 Ill. 596; Cooley, Taxation, pp. 47, 48, 313, 314, 364; *State ex rel. Mayor v. Ensign,* 54 Minn. 372, 56 N. W. 1006; *Bauman v. Ross,* 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270. We may observe, however, that we think the statute in question goes as far as permissible in the direction of imposing upon the judiciary legislative functions.

It is urged that much property not "contiguous" to the improvement is assessed. This proceeding was commenced under the provisions of the act of 1893. While § 19 of said statute would seem to restrict the assessment to "con-

tiguous" property benefited, it is questionable whether the
act, construed as a whole, should be given that effect.   There
is also much doubt as to whether the term "contiguous," as
used in the statute, should be given the literal meaning which
its derivation might suggest, and which some of appellants
insist upon.   Authority is not wanting for an interpretation
giving this term, as employed in statutes of this character,
a more comprehensive meaning.   However, we do not re-
gard a determination of either of these questions essential
in this case.   Before the supplementary petition herein was
filed, and before assessment for this improvement was ap-
portioned or confirmed, the legislature amended said § 19 by
eliminating therefrom the word "contiguous."  Laws 1903,
p. 24.   No valid reason is shown why the new law should
not be controlling in this proceeding.   Consequently, the as-
sessment could be legally apportioned upon the property
benefited, regardless of whether or not it was contiguous.
*Spokane v. Browne,* 8 Wash. 317, 36 Pac. 26; *Cline v.
Seattle,* 13 Wash. 444, 43 Pac. 367; *Lewis v. Seattle,* 28
Wash. 639, 69 Pac. 393.

Error is assigned by one appellant upon the action of the
court in sustaining a "lump" assessment against two entirely
separate portions of a certain lot, these parcels being sep-
arated by the width of the new avenue.   We think this as-
signment well taken.   While these tracts were formerly por-
tions of the same lot, the laying out of the new avenue,
pursuant to the condemnation proceedings, terminated the
entity of said lot, and left the untaken portions as separate
and distinct parcels.   The tax for the benefits accruing to
each of these should have been assessed thereupon separately.

Objection is made that the commissioners, in estimating
the benefits to be assessed upon certain property, did not
take into consideration the special use being made of said
property and for which it was well adapted for the future.
It was the duty of the commissioners to regard this special
use and to consider any and all uses being made of property

or for which the property was, or would naturally, and with reasonable probability become, suitably adapted. In the light of all these facts and the character and extent of the improvement, it was for the commissioners to say how much such property was benefited.

Contention is made that the commissioners, in apportioning benefits, took into consideration matters remote, speculative, vague and conjectural, which they thought might exist in the future. It was the duty of the commissioners, having regard for the present use, character, and value of each parcel of property, to consider what benefits now accrued to said property by reason of those results naturally and reasonably to be expected as concomitants of the changed condition occasioned by the improvement in question. Probable and logical sequences, rather than fanciful and visionary anticipations, must guide the action of the commissioners in estimating such benefits. Lewis, Eminent Domain (2d ed.), § 478, uses the following language:

"In estimating the value of property taken for public use it is the market value of the property which is to be considered. The market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. It is not a question of the value of the property to the owner. Nor can the damages be enhanced by his unwillingness to sell. On the other hand, the damages cannot be measured by the value of the property to the party condemning it, nor by its need of the particular property. All the facts as to the condition of the property and its surroundings, its improvements and capabilities, may be shown and considered in estimating its value. Of course circumstances and conditions tending to depreciate the property are as competent as those which are favorable."

In *Kankakee Stone & Lime Co. v. Kankakee,* 128 Ill. 173, 20 N. E. 670, the supreme court of Illinois said that, in making the assessment, the question was: "What will the influence of the proposed improvement be upon the market value of the property claimed to be benefited thereby ?" In the case of *Seattle etc. R. Co. v. Murphine,* 4 Wash. 448, 30 Pac. 720, this court, speaking by Anders, C. J., said:

"The market value of property is its value for any use to which it may be adapted, and in estimating its value all the uses of which the property is susceptible should be considered, and not merely the condition in which it may be at the time and the use to which it may have been put by the owner."

The supreme court of the United States, speaking through Mr. Justice Field, in *Boom Co. v. Patterson,* 98 U. S. 403, said:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. . . . So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

See, also, Cooley, Taxation (3d ed.), p. 1234; *Friedenwald v. Baltimore,* 74 Md. 116, 21 Atl. 555.

Much stress is laid upon the contention that the improvement in question was of general benefit to the city at large

and not confined in its beneficial effects to the property as-
sessed—at least, not to the extent indicated by the proportion
of the cost levied upon the property in said district.    The
statute expressly enjoins upon the commissioners the duty
of apportioning the total cost between the city and the dis-
trict specially benefited in such proportion as shall be rela-
tively equitable.    If, however, they fail to do this, the power
of the court to review their action is restricted.    This statute
was borrowed almost literally from that of Illinois.    The
supreme court of that state has held that the action of the
commissioners in determining what portion should be as-
sessed to the city and what portion to the property specially
benefited, cannot be inquired into by the court when the roll
comes before it for confirmation.    *Bigelow v. Chicago,* 90
Ill. 49 ; *Fagan v. Chicago,* 84 Ill. 227.    These decisions were
prior to the adoption of the statute by us.    A rule frequently
invoked is that a borrowed statute should be given the con-
struction placed upon it by the courts of the state from whence
it comes.    We think, therefore, that the action of the com-
missioners, in apportioning the amounts to be borne respec-
tively by the city as a whole and by the property specially
benefited, is conclusive, in the absence of fraud, mistake (of
fact or law, but not in matters of opinion), or arbitrary action
amounting to a manifest abuse of discretion.    The same may
be said as to the size of the district, and the quantity of
property covered by the assessment roll which it returns.

It is also urged that the court had no right to restrict the
assessment to the property embraced in the improvement dis-
trict prescribed by the city ordinance, but that the same
should have been made upon, and apportioned to, all prop-
erty benefited—regardless of whether the same was within,
or without, the district designated by the ordinance.    These
proceedings were had under the act of March 9, 1893 (Laws
1893, p. 189.).    This statute does not provide for the cre-
ation of any assessment district, nor does it say, expressly,
what authority shall determine how much or what property

is benefited. It does, however, provide that all the property benefited shall be assessed by the board of commissioners appointed by the court.

In the case at bar, the city council, in its ordinance, created an assessment district and recited that the property therein was specially benefited and should be assessed. It did not, however, recite that the property covered by said district was all of the property specially benefited by the improvement. The statute requires the commissioners to take an oath of office before entering upon the discharge of their duties. That oath is as follows:

"State of Washington, County of ————, ss.

"We, the undersigned commissioners appointed by the superior court of ———— county, State of Washington, to assess the cost of ———— (here state in general terms the improvement), do solemnly swear (or affirm, as the case may be) that we will a true and impartial assessment make of the cost of said improvement upon the city of ———— and the property benefited by such improvement, to the best of our ability and according to law." Laws 1893, p. 196, §21.

A portion of § 22 of said statute reads thus:

"It shall be the duty of such commissioners to examine the locality where the improvement is proposed to be made, and the lots, blocks, tracts and parcels of land that will be specially benefited thereby, and to estimate what proportion of the total cost of such improvements will be of benefit to the public and what proportion thereof will be of benefit to the property to be benefited, and apportion the same between the city and such property, so that each shall bear its relative equitable proportion; and having found said amounts, to apportion and assess the amount so found to be of benefit to the property upon the several lots, blocks, tracts and parcels of land in the proportion in which they will be severally benefited by such improvement." Laws 1893, p. 196, § 22.

It would seem, from necessary implication, that the duty of determining the amount of property benefited was, by this statute, imposed upon the commissioners. They are charged expressly with the duty of apportioning the assess-

ment equitably as between the city and the property specially benefited; and, as to the latter, they are required to apportion and assess the amount of the tax to the parcels benefited so that each shall bear its proportionate share according to benefits. It will thus be seen that the commissioners must be fully advised of all the property benefited, and of the amount of benefit accruing to the city as a whole, and to each parcel of property involved. They must have this knowledge before levying the assessment. No provision is made in the statute for furnishing them this information. It would seem to have been the intention of the lawmakers that the commissioners should themselves ascertain what property was benefited as well as the extent of the benefit. The language of the statute seems to naturally imply this. There is nothing authorizing the council or any other authority (than the commissioners) to ascertain the extent of the district benefited. The statute makes it the duty of the commissioners to examine the "locality" of the proposed improvement and the property "specially benefited." From this it would seem that the "locality" and the "property specially benefited" were not necessarily the same.

If it were the intention of the legislature that the assessment of benefits should be confined to the district created by the city council, there would be no occasion for the commissioners to examine the "locality" other than the particular parcels included in the district defined by the ordinance. That portion of the statute requiring an examination of the locality would be surplusage if it be held that the city council, instead of the commissioners, determines what property is benefited, and establishes the assessment district. Language in a statute will not be construed as needless and surplusage if a legal and reasonable interpretation of the statute is permissible, that would give effect to said language.

It appears to be the practice in Illinois for the commissioners to designate what property is benefited and to be assessed. *Bigelow v. Chicago,* 90 Ill. 49 (see page 55).

Under a similar statute, the court of appeals of New York, in the case of *People ex rel Lehigh Val. R. Co. v. Buffalo,* 147 N. Y. 675, 42 N. E. 344, held that it was the duty of the commissioners, and not the city council, to determine the size of the district to be assessed.   The court said:

"The claim that the district of assessment should have been fixed by the common council, and not by the assessors, depends upon the provisions of the charter.   It was competent for the legislature to prescribe the public agency to which this power should be committed.   It could have imposed this duty upon the common council, or on a board of commissioners, or on the assessors.   *Spencer v. Merchant,* 100 N. Y. 585, 3 N. E. 682.   The charter does not in direct terms declare that the assessors are to determine the district of assessment.   But we think this is the clear implication from its provisions.   By section 405 of the charter (chapter 105, Laws 1891), the city is authorized to dredge, deepen, and maintain the Buffalo river, and to defray the expense out of the general fund, or by local assessment.   Section 143 provides that the common council shall estimate and fix the amount of money to be raised by local assessment. There is no provision that the common council shall fix the assessment district.   In the absence of any indication that the assessors or other body should possess this power, it might very well be that it would reside with the common council, under the grant of legislative power.   But section 145 declares that the board of assessors shall assess the amount ordered to be assessed for local improvements upon the parcels of land benefited by the work, act, or improvement in proportion to such benefit.   The common council under the charter are to determine what local improvements shall be made, and the amount to be locally assessed therefor.   But the clear implication from section 145, in the absence of any other charter provision on the subject, is that the assessors are both to fix the district of assessment and distribute the tax."

It appears that the first assessment roll was vacated and set aside by the court upon the ground that the commissioners had assessed property situated outside of the boundaries of the assessment district created by the ordinance.   This

was error. All the property which the commissioners found to be benefited by the improvement was properly included in an assessment roll. The action of the court in appointing a new board, with directions to assess only the property included within the limits of the district defined in the ordinance, was erroneous, and the assessment, as returned in the second roll, illegal and voidable.

As the judgment appealed from, in so far as it affects the property of these appellants, must be reversed, a question arises as to what proceedings should be taken looking to a new assessment. Section 27 of the statute provides that, where objections are not filed within the time ordered by the court, "default may be entered and the assessment confirmed by the court." A portion of § 30 reads as follows:

"The judgment of the court shall have the effect of a separate judgment as to each tract or parcel of land assessed, and any appeal from such judgment shall not invalidate or delay the judgment except as to the property concerning which the appeal is taken." Laws 1893, p. 200, § 30.

From this provision it appears that the action of this court can affect only the property of appellants; and that those property owners who did not appeal cannot share in the fruits of success with those who bore the burden of the appeal against the illegal assessment.

The judgment, in so far as it affects the property of appellants, is reversed, and the case is remanded to the honorable superior court with the following instructions: Said court shall appoint a board of commissioners. Said commissioners shall ascertain how much real estate is specially benefited. They shall prepare an assessment roll comprising the property on account of which these appeals were taken, together with all property specially benefited and lying outside of the district heretofore assessed. The costs of this appeal shall be assessed against the city as a whole. All of the expenses of the former proceedings and assessments and the one now ordered to be made, and the probable further

costs of the proceeding, and the estimated costs of making and collecting such assessment, shall constitute an amount which—excepting what is already assessed against the city and upon property the owners of which did not appeal—shall be apportioned and assessed upon the various parcels of real estate to be described in said roll, in the proportion in which they will be severally benefited by such improvement. Had the appeal been taken by the owners of all the property assessed, a different disposition would probably have been made as to the expense of the former proceedings and assessments.

MOUNT, C. J., FULLERTON, HADLEY, CROW, DUNBAR, and RUDKIN, JJ., concur.