[No. 8495.   Department Two.   August 5, 1910.]

### In re BLEWETT STREET, SEATTLE.

### REBECCA WOLVERTON, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MUNICIPAL   CORPORATIONS — IMPROVEMENTS — EMINENT   DOMAIN COMMISSIONERS.   The board of eminent domain commissioners created by Rem. & Bal. Code, § 7788, are city officials, and not within Const., art. 11, § 5, requiring all county, township, precinct, or district officers to be elected.

SAME—EMINENT DOMAIN—ASSESSMENT OF LANDS NOT TAKEN— VERDICT.   Where a jury in condemnation proceedings for land taken for an improvement found generally that lands not taken were not damaged, the same may be assessed for benefits; and it cannot be shown that the jury merely found that the lands were not damaged in excess of benefits, by oral evidence to the effect that at the trial before the jury it was stipulated that the only issue was whether the lands were damaged in excess of the benefits and that witnesses for the city admitted damage and the jury were instructed that the damage must exceed the benefits; since such evidence and the general verdict, in the absence of special finding, does not necessarily imply that the jury found any actual damage.

Appeal from an order of the superior court for King county, Frater, J., entered July 22, 1909, confirming an assessment roll, after a hearing before the court on the merits.   Affirmed.

*Carkeek & McDonald*, for appellant.

*Scott Calhoun* and *Howard A. Hanson*, for respondent.

[1]Reported in 110 Pac. 29.

CROW, J.—Ordinance No. 14,889 of the city of Seattle provided for the condemnation of private property to extend Blewett street, and for the levy of a special assessment to pay the compensation and damages awarded. On October 2, 1907, the city filed its petition in the superior court, praying that just compensation be made for property to be taken and damaged. Edith May Graham appeared as owner of land a portion of which was to be taken. The jury by their verdict awarded her $3,257.50 for the land taken, and found that the remainder of her land was not damaged. Judgment was entered upon the verdict, and on July 28, 1908, the city filed its supplemental petition for a special assessment to pay compensation to the various owners for their property taken and damaged. The matter was referred, by order of court, to the board of eminent domain commissioners of the city of Seattle, to make an assessment in the manner provided by law. An assessment was prepared, which, upon the hearing of exceptions thereto, was set aside, and the matter was again referred to the commissioners for a new assessment, which was prepared and in due course of procedure filed with the clerk. Pending these proceedings, Edith May Graham conveyed her interest in the tract not taken to Rebecca Wolverton, who on June 28, 1909, filed objections to an assessment of $300 thereon, which had been made by the commissioners. These objections were heard on July 7, 1909, and overruled by the superior court, which confirmed the reassessment. From the order of confirmation, Rebecca Wolverton has appealed.

Appellant first contends that the assessment roll was prepared by a board not authorized by law; that it is therefore void; and that the act, Rem. & Bal. Code, § 7788, creating the board of eminent domain commissioners and providing for their appointment, is in violation of § 5, art. 11, of the state constitution, which requires their election. The section mentioned reads as follows:

"The legislature, by general and uniform laws, shall pro-

vide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them, and for all public moneys which may be paid to them, or officially come into their possession."

It is manifest that this section has no application. The board of eminent domain commissioners are city officials. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279. They are not officials of any county, township, precinct, or district, all of which political organizations may be clearly distinguished from municipal corporations, such as cities or towns, created by law, and authorized to conduct a local self-government having a mayor, common council, and other officials. It was not the intention of the framers of the constitution, nor of the people who adopted it, to require the election of each and every officer of a municipal corporation. Courts will not declare an act of the legislature invalid when it is claimed to be in conflict with the constitution, unless such conflict be clear and unquestioned. Every intendment must be given force in favor of the constitutionality of the law. We find no conflict here.

On the hearing of appellant's objections to the reassessment, she called one of the eminent domain commissioners, who testified that the board did not make any inquiry as to evidence presented on the condemnation trial, but that they assessed according to special benefits all property as to which the jury had returned a verdict of no damages, and that in his opinion the assessment of $300 on appellant's property was not more than it would be specially benefited, nor more than its proportionate share of the cost of the improvement. Appellant then called the court stenographer who had reported the condemnation trial, and asked:

"I'll ask you to state whether or not the parties, Edith May Graham and the petitioner, the city of Seattle, did not at that trial agree on all the issues between them, except the question of damages to the remainder of the original tract,. that is, the tract now in controversy, and that was the only question contested and submitted to the jury."

An objection being sustained to this question, appellant,. through her attorney, then made the following offer:

"I now offer to prove by this witness that on June 4th,. 1908, a trial was had before a jury in this cause on the original petition filed herein for the condemnation of the parcel of land of which the property assessed in this roll is. the remainder not taken in said proceeding. That by a stipulation entered into in open court on said trial, between Edith May Graham, then owner of said property, the grantor of objector Rebecca Wolverton, and the petitioner, the city of Seattle, the only issue contested and submitted to the jury was the question of whether or not the remainder of said lots. was damaged in excess of the benefits by the improvement proposed herein, and if not, the extent of such damage. That the said Edith May Graham introduced evidence to the jury that the property herein assessed, being the part of the original not taken, was damaged in the sum of $500 by reason of the taking of the part condemned, over and above any local or special benefit arising from such proposed improvement. That the witnesses for the city and all the evidence introduced by said petitioner admitted that the remainder of said original tract would be damaged were it not for the fact that the special benefits accruing from the improvement to the part of the land not taken would equal and just offset the damages sustained by it, and that therefore, said remainder of said original lot would not be damaged. And I further offer to prove by this witness that his honor Judge Arthur E. Griffin, the judge presiding at said trial, instructed the jury that the damages found in respect to the remainder of said proposed lot should be over and above any special benefit arising from said improvement."

To this offer an objection was also sustained and an exception allowed. Appellant insists that the trial court erred in rejecting this offer, and contends that in a condemnation proceeding, when a municipal corporation attempts to assess.

benefits upon the residue of a lot, a part of which has been taken for a street, it is proper to show by parol evidence that at the condemnation trial the benefits accruing to the residue were offset against the damages done thereto, and that if in fact the jury offset the benefits against the damages, and found that the one was just equal to the other, the city has already received full compensation for the benefits conferred, and should be estopped from making any special assessment. This court in *Smith v. Seattle*, 41 Wash. 60, 82 Pac. 1098, and *Schuchard v. Seattle*, 51 Wash. 41, 97 Pac. 1106, in substance held, that when an actual award of damages to property not taken has been made in a condemnation suit, and the jury in arriving at such award had under instructions offset all legal and special benefits arising from the proposed improvement, an assessment against the damaged property for the same improvement cannot be sustained. Those cases have no application here, the jury having awarded no damages.

After calling attention to the fact that our eminent domain act was taken from that of Illinois, appellant cites *Leopold v. Chicago*, 150 Ill. 568, 37 N. E. 892, and insists that it should be followed by us. In that case the Illinois court did hold that evidence such as appellant offered to introduce was competent and admissible. But in the later case of *Chicago v. Mecartney*, 216 Ill. 377, 75 N. E. 117, the same court, in commenting on the *Leopold* case, said:

"As to the case just cited, it may be said that the legal principles stated in the opinion are correct and in accordance with previous decisions, although the conclusion drawn from them is perhaps a *non sequitur* which should not be followed."

The conclusion was that the evidence should have been admitted. If the trial judge had admitted the evidence offered in this action, it could not be determined therefrom that the jury in the condemnation proceeding actually found that the damages to the land not taken amounted to just

$500; that the benefits from the improvement were exactly $500, and that by offsetting the one against the other they reached their verdict of no damages. In other words, the evidence would not exclude the theory or probability that in weighing the evidence the jury may have rejected as unworthy of belief all evidence introduced to show damages, and may not have found any damages whatever against which they would be called upon to offset benefits. With the evidence admitted as offered, it would have been impossible for the trial judge to positively reach the conclusion that the jury did find damages, or that it did offset benefits. Appellant's only purpose in offering the evidence was to create an estoppel and prevent the city from making any assessment whatever, but there could be no such estoppel unless the jury did actually find damages and did actually offset against such damages all benefits to the property not taken. The final verdict may have been reached by rejecting all evidence of damages and without offsetting benefits, or the benefits might have exceeded the damages by a very considerable sum. In *Soderberg v. Armstrong*, 116 Fed. 709, the plaintiff sought to enjoin the defendants from extracting ore from a mining claim. The defendants pleaded in bar a former suit for substantially the same purpose, between them and plaintiff's assignor, in which they, the defendants, denied ownership of the mine by plaintiff's assignor, also denied that they had extracted any ore, and alleged that on a jury trial and the evidence then introduced, a verdict was returned and a judgment was entered in their favor. In holding that the judgment thus pleaded did not constitute an estoppel, the court said:

"It clearly appears from the pleadings therein that defendants might have obtained a verdict in their favor upon two different and independent grounds,—one that complainant was neither the owner of nor entitled to the possession of the mining ground in controversy; the other, if the defendants failed to sustain this proposition, that they had never extracted any ore from any part of the ground. The extrinsic

evidence adduced by the defendants shows that both of these questions were properly submitted to the jury; but this fact does not show that both questions were decided by the jury. The judgment was rendered upon the verdict of the jury. Who can tell from the record upon which point the jury decided the case? In *McDowell v. Langdon*, 3 Gray, 513,—a case in principle on all fours with this case,—it was held that a verdict and judgment for the defendant in an action at law for obstructing the flow of water to the plaintiff's mill, on a plea of not guilty, and a specification of defense denying both the plaintiff's right and an injury thereof, are no bar to a suit in equity to restrain such obstruction, unless it appear, either by the record or by extrinsic evidence, that the defendant did not prevail in that action for want of proof that he had violated the plaintiff's right."

So here, with the offered evidence and proof admitted, it would be impossible, in the absence of special findings, to determine from such evidence and from the general verdict of no damages in the condemnation proceeding that the jury actually found the land taken had been damaged, and in addition thereto that, having so found, they offset all benefits against such damages. Appellant erroneously assumes the respondent's position to be that, because the jury found no damages, they must necessarily have found benefits. On the contrary, its only position is that the verdict found no damages, and that no finding either of benefits or no benefits was necessarily made. In the absence of special findings, it cannot be now determined whether the jury actually offset benefits against damages. Benefits have since been found by the board of eminent domain commissioners, as the basis of an assessment. The appellant, upon the hearing of her objections, was entitled to show, if such was the fact, that no benefits had resulted to her property from the improvement, but she could not make that showing in the manner attempted, or by proceeding upon the theory that the general verdict of the jury, aided by the repetition of the evidence admitted on the condemnation trial, would establish her contentions. In *Chicago*

*v. Mecartney, supra,* the supreme court of Illinois further said:

"If the jury in a condemnation proceeding award damages for property not taken the judgment is conclusive against a subsequent proceeding to assess it for benefits, because the judgment is conclusive that there are damages and not benefits; but where a jury simply find that there are no damages, the verdict and judgment are not and cannot be conclusive that there are no benefits. The fact that property is greatly benefited and doubled in value by an improvement is not inconsistent with a verdict that it is not damaged, but perfectly consistent with it. It would seem to be an absurdity to say that the finding of a jury that the property of defendant in error was not damaged was also a finding that it was not benefited—a question which the jury could not legally consider."

We find no error in the record. The judgment is affirmed.

RUDKIN, C. J., PARKER, DUNBAR, and MOUNT, JJ., concur.