HUGH McCAFFREY ET AL., APPELLANTS, V. CITY OF OMAHA ET AL., APPELLEES.

FILED APRIL 8, 1912.   No. 16,567.

1. **Municipal Corporations**: STREET IMPROVEMENT DISTRICTS: LEVYING ASSESSMENTS. Before the mayor and council of a city of the metropolitan class are authorized to order the paving of a street in a district not entirely within 4,500 feet from the streets surrounding the city hall grounds, there must be a petition of the property owners of the proposed district, and a street improvement district must be created by ordinance (Comp. St. 1911, ch. 12a, secs. 106, 107). The improvement district so formed is the foundation of all further proceedings in that behalf, including the levying of taxes to pay for the improvement (sec. 198) and the relevying of taxes for the improvement when a former levy has been set aside for irregularities (sec. 186).

2. ———: ———: ———. All taxes for such improvements must be levied on property specially benefited by the improvement, but no taxes for the improvement can be levied on property outside of the improvement district.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*B. N. Robertson, H. C. Robertson, Joseph McCaffrey* and *Harry Fischer,* for appellants.

*Harry E. Burnam, I. J. Dunn* and *John A. Rine, contra.*

SEDGWICK, J.

In August, 1907, the mayor and council of the city of Omaha passed an ordinance "creating improvement dis-. trict No. 961 in the city of Omaha for the improvement of that part of Jackson street from 28th street to the west line of 30th street in said city, by curbing and paving, and fixing and defining the boundaries of said district and ordering the improvement of the same." The ordinance fixes the boundaries of the district, names the lots and blocks included therein, and directs the city clerk to advertise for and receive bids upon material of different kinds. Afterwards, an ordinance was passed reciting that the record owners of lots in the improvement district "have failed to designate the material for said pavement" and providing that the material used shall be "Purington vitrified brick block for paving and Indiana stone for curbing." Afterwards an ordinance was passed entitled "An ordinance levying a special tax and assessment on all lots and real estate within street improvement district No. 961 in the city of Omaha, to cover the cost of paving and curbing Jackson street from 28th street to 30th street." By this ordinance taxes were levied against lots not included in the improvement district. The owners of such lots objected to the assessment of such taxes and afterwards appealed to the district court. The district court sustained the action of the city council, and the property owners have appealed to this court.

The counsel for the city insist that the mayor and council can levy taxes to pay for the improvement upon any and all property benefited thereby, whether the same is within or without the improvement district. Section 107, ch. 12a, Comp. St. 1911, provides that the mayor and city council shall have authority to create street improvement districts for the purpose of improving all streets, alleys, or other public grounds therein by paving, etc., and section 106 provides that in the same ordinance that creates improvement districts for paving, etc., the mayor and council

shall "direct the city clerk to advertise for and receive bids upon" different kinds of material. Section 107 provides that the mayor and council may order the improvement by ordinance and cause it to be made when it is embraced in any district, the outer boundaries of which shall not exceed a distance of 4,500 feet from any of the streets surrounding the city hall ground. If the improvement is in a district "outside of said 4,500 feet limit" it can be ordered "only upon petition of the record owners of a majority of the frontage of taxable property in such district." This improvement district was outside of the specified limit.

The principal purpose of creating an improvement district is to determine what property is liable to assessment if specially benefited, and to give to the owners of property liable to be assessed for the improvement "a voice in the determination of how, when and where the improvement shall be made." The formation of the improvement district is the foundation for all subsequent proceedings. This district so formed composes the territory to be affected by the improvement, which it is supposed will be benefited thereby. Property owners within the district must take notice that their property will be affected, and that they may be called upon to pay the expenses of the improvement. The second subdivision of section 108 of the act requires the mayor and council "to give the property owners *within any district*" opportunity to designate the materials to be used. The district so formed must be given a definite corporate name for the purpose of paying for the improvement. Section 198. The formation of the district is also important because all of the property owners within the district, as above stated, are entitled to participate in designating the materials to be used. "Property owners whose property will be charged by the establishment of a paving district are entitled to insist that the several petitioners therefor sign in such a way as to be fully and legally bound, * * * the whole tendency of recent legislation in this state has been to

give those who are to be *assessed with the cost of paving* a voice in the determination of how, when and where the improvement shall be made." *Batty v. City of Hastings,* 63 Neb., 26. In *Morse v. City of Omaha,* 67 Neb. 426, this court quoted with approval the following statement of the supreme court of the United States, in *Ogden City v. Armstrong,* 168 U. S. 224: "No jurisdiction vested in the city council to make an assessment or to levy a tax for such an improvement, until and unless the assent of the requisite proportion of the *owners of the property to be affected* had been obtained," and in the same case this court quoted from *Sharp v. Speir,* 4 Hill (N. Y.) 76, in which it was held that it was not competent for the city authorities to decide "that a majority of the persons intended to be benefited had signed" the petition for the formation of the district, unless such was the fact, and that that question could be subsequently investigated by the courts. It also quoted from the supreme court of Michigan in *Auditor General v. Fisher,* 47 N. W. 574 (84 Mich. 128), to the effect that whether a majority of the property holders had signed the petition could be determined in collateral proceedings. In *Wiese v. City of South Omaha,* 85 Neb. 844, this court, as the basis of its decision, quoted with approval from Welty, Law of Assessments, sec. 297: "An important principle of law in this connection is that the district which is to be taxed with an assessment to pay for a local improvement must be accurately defined." In the syllabus the law is stated to be: "It is the duty of a city, when creating an improvement district for a local improvement, to define the limits thereof with sufficient certainty to identify the lots or lands sought to be included therein, and to publish a statement of such limits." The discussion in the opinion is upon the theory that the property to be assessed must be included in the improvement district. In *Shannon v. City of Omaha,* 73 Neb. 514, it is said in the first paragraph of the syllabus: "All of the property in a sewer district which is benefited by the improvement should bear its fair proportion of the neces-

sary expense," and in the opinion, "Such expense should be borne by the property in that district especially benefited thereby to the extent and in the proportion of such special benefits." It was held that when improvements are contemplated in a sewer district the council cannot determine in advance what part of the property in the district will be benefited and form a new district embracing only such property, because by so doing they would exclude property in the old district, and not included in the new, from assessments for the improvement. It is not necessary to cite and review the innumerable decisions of this court that are predicated upon that proposition. Various other sections of the act of 1905, under which these proceedings were had, declare and imply the importance of the power to form an improvement district for such purposes, and the statute as a whole is in harmony with our numerous decisions. It has also been held by this court, as stated in *Morse v. City of Omaha,* 67 Neb. 426: "Statutory provisions authorizing assessments of special taxes against property benefited by public improvements are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the record to show such proceedings will not be aided by presumptions."

Under the contention of the city in this case, the formation of an improvement district has no purpose whatever, no subsequent action of the city authorities or the property owners has any reference to the improvement district in any manner; and this in the face of the statute which forbids the council to take any other proceeding in the matter until they have created the improvement district. The contention is that, if the improvement district has been formed and the improvement has been made, the authorities may levy assessments to pay for the improvement without any regard to the improvement district, and upon property beyond its limits. It is not necessary to determine whether the legislature could confer such, here-

tofore unheard of, powers upon the city council. It is suffi-
cient to know that it has not intended or attempted to do
so. This question is to be determined by a construction of
the statute, and if the various provisions of the statute
are construed together there can be no doubt of the legis-
lative intention. Section 198 of the act provides that for
the purpose of paying for the the improvement the mayor
and council may issue bonds of the city to be called " 'Dis-
trict Street Improvement Bonds' of District No. —," and
may provide that the "special taxes and assessments levied
*in said district* shall constitute a sinking fund for the
payment of said bonds and interest." Here is direct and
plain legislation that when bonds are issued property
outside of the district cannot be assessed for the improve-
ments. And, again, section 186 provides that in cases of
mistakes, irregularities, etc., in the proceedings the mayor
and council may correct the proceedings and levy (if no
levy had been made) or relevy (if a former levy had
proved invalid) "a special assessment on any or all prop-
erty in said district"—an express provision that no re-
levy can be made on property outside of the district. Did
the legislature intend that, while no property outside of
the district can be taxed to pay for the improvements
when bonds are issued, still when no bonds are issued
property outside of the district may be assessed for the
same improvement, and that the first levy can be made on
property outside of the district; and if that levy is set
aside for irregularities the relevy can only be made on
property inside the district? It is not necessary to in-
quire whether the legislature, if it desired, could so trifle
with the interests of the taxpayers, because it is manifest
that it has neither intended nor attempted to do so.

Section 107 provides that "the mayor and city council
shall have power to levy special taxes or assessments on
account of said improvements on any or all property
benefited thereby according to the special benefits re-
ceived by said property from said improvement." This fol-
lows the provision authorizing the mayor and council "to

create street improvement districts for the purpose of improving all streets," and the general language used in regard to the special assessments clearly applies to property within the district, which by the preceding clause is created for that very purpose. No taxes for such purpose can be levied upon property in excess of benefits to that property. Without such limitation the statute would be unconstitutional, and the purpose of this clause is to restrict the amount of the levy to the special benefits received by the property taxed. It was unnecessary to repeat in the second clause of the section what was so plainly said in the first, that the district was created for the purpose of improving the streets, which necessarily included the formal proceedings and providing the means for such improvement. That clause of the second subdivision of section 108 of the act, which provides that before improvements are ordered in any district there must be a petition of the "record owners of a majority of the taxable foot frontage of property upon such street or alley to be improved within said district," is cited. We are asked to construe this clause of the statute as though it read: "Record owners of a majority of the frontage of lots or tracts abutting upon the improvement." It would give no meaning whatever to the words; "taxable foot frontage of property upon such street or alley to be improved within said district." It is not the object of this clause of the statute to limit the territory that shall be embraced in the improvement district, nor to change the law as to the purposes for which an improvement district may be formed. The object is to afford a method of determining when the proper number of property owners within the district have signed the petition.

Section 177 of the act provides: "All special assessments to cover the cost of any public improvements herein authorized shall be levied and assessed on all lots, parts of lots, lands and real estate specially benefited (by) such improvement, or (and) within the district created for the purpose of making such improvement." It is con-

tended that this means that property can be assessed if either of two things exist; that is, if it is specially benefited, *or* if it is within the improvement district, but such construction would make the section unconstitutional. No property can be assessed unless it is specially benefited. Therefore this language cannot be given such an extended meaning. It is the duty of the court to construe the act of the legislature so as to uphold it rather than to give such meaning to the words as to render the act unconstitutional. When this section is construed together with the remainder of the act, it is manifest that the legislature intended that property within the district specially benefited should be assessed ·for the improvement. Sections 186 and 198, above quoted, plainly show that it was the purpose and meaning of the legislature to provide for the creation of an improvement district which should include all property to be assessed, and that the owners of all property to be assessed for the improvement shall have a "voice in the determination of how, when and where the improvement shall be made," as is said in *Batty v. City of Hastings, supra,* and substantially also in many other decisions.

It is suggested that the mayor and council might, by a subsequent ordinance, create a "taxing district" which would include property benefited but not included in the improvement district required by statute. In all the different states it is required when work of this kind is to be done that a district shall be formed. This district is sometimes called a paving district, a sewer district, a taxing district, and assessment district, or an improvement district. The latter is a general word and covers all of the purposes for which the district is formed. It makes no difference which one of these several names is given to the district. Our statute requires that the district be formed the first thing that the council does, and calls it the improvement district, and says that it is for the purpose of "improving all streets * * * by paving," etc. In the index to Page and Jones on Taxation by Assess-

ment we find the title "Improvement District," and a reference to section 249 for a discussion of the power of an improvement district. Section 249 refers to the district that the law requires to be formed several times, and in this same section it names it "a special assessment district" and "an assessment district" and "the improvement district" and again "an assessment district." These authors used the names interchangeably. The same authors say in section 874: "The power of fixing an assessment district is frequently conferred by statute upon the council of the public corporation, by which the improvement is to be constructed, or some body corresponding thereto. Under such statutes the assessment district must be fixed by ordinance. * * * A general description of the property embraced in an assessment district is sufficient. It has been said that any description which would be sufficiently certain in a conveyance is sufficiently certain as a description of an assessment district." And in section 833: "If the statute requires the resolution to specify the exterior boundaries of the district benefited, an ordinance which describes the exterior boundaries as 'the land fronting upon a given described street between two specified cross-streets' is insufficient, as it does not show the depth of the improvement district from such street. Whether the resolution which fixes the boundaries of the assessment district is in compliance with statute is a state question, and not a federal question." In *Whitney v. Common Council of Village of Hudson,* 37 N. W. 184 (69 Mich. 189), the supreme court of Michigan states the law to be: "Under a village charter (Sess. Laws Mich. 1867, Act No. 266, sec. 38) providing that the council may levy a tax for paving streets upon such premises as in their opinion are benefited thereby, a resolution of the council to pave part of a street, declaring that 'the real estate abutting or adjoining said street * * * shall constitute the taxation district for such purpose' is illegal, as not specifying a definite taxing district." And in *Boehme v. City of Monroe,* 106 Mich. 401, the court ad-

hered to this decision, and in the first paragraph of the syllabus shows that it is necessary that the resolution to pave a street shall designate the paving district. Can such a district be formed by mere implication by simply levying a tax upon a certain lot or lots?

Our statute requires the council to form an improvement district, as before stated, but it nowhere requires or authorizes them to form another district. The term "taxing district" is not named in the statute. Section 175 provides that the council shall sit as a board of equalization, and that as such board it shall "hear and determine all complaints, and shall equalize and correct such assessment" (that is, the assessment that has been reported by the proper authorities). That is all that the board of equalization can do, and then, after all corrections have been made, the council, not as a board of equalization, but "at a regular meeting thereafter," can levy such special assessments; that is, such special assessments as have been equalized by the board of equalization. This is all that the council can do, and it is impossible to find in these provisions any authority for forming any taxing district, and it would seem to be an idle thing to do, after the district which the law requires has been already formed in the commencement of the proceedings. The improvement district is the foundation of all other proceedings, and the improvement is to be paid for by issuing bonds, styled "Improvement district bonds," giving the number of the district, and by levying a tax upon the property in said district to pay the bonds. If the first assessment is set aside for irregularities a new assessment may be made upon the property *in the district.*

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., took no part in the decision.

BARNES, J., dissenting.

I cannot concur in the majority opinion for the follow-

ing reasons: Subdivision 2, sec. 107, ch. 12*a*, Comp. St. 1907, which was in force and constituted a part of the Omaha charter when the improvement district in question was created, gave the mayor and council power to order a street improvement upon a petition signed by the record owners of a majority of the frontage of taxable property within the district, and contained no provision which required the signatures of the owners of nonabutting property which would utlimately be benefited thereby. It appears that the owners of the lots in question herein were not required to sign the petition, and therefore the charter gave them no right to protest against the formation of the improvement district, or to select materials to be used in making the street improvement. See subdivision 2, sec. 108 of the charter. This fact gave appellants no legal right to complain of the assessment in question, for, as was held in *Kountze v. City of Omaha,* 63 Neb. 52, it would have been competent to commit the propriety of paving the streets of Omaha to the uncontrolled discretion of the mayor and council in all cases; and in *Dennison v. City of Kansas,* 95 Mo. 416, it was said: "The legislature can confer on a city council the power to improve the streets of the city at the cost of the property owners without requiring a petition therefor."

It appears from the record that the questions actually litigated and determined by the district court are as follows: Did the board of equalization and assessments have the power to create a taxing district embracing lots not actually abutting upon the street improvement? And could such nonabutting lots be taxed to pay for the improvement to the extent and amount to which they were benefited thereby? Chapter 12*a,* Comp. St. 1907, commonly called the Omaha charter, so far as it relates to the foregoing questions, reads as follows: Section 177. "All special assessments to cover the cost of any public improvements herein authorized shall be levied and assessed on all lots, parts of lots, lands and real estate specially benefited by such improvement, or within the district

created for the purpose of making such improvement, to the extent of the benefits to such lots, parts of lots, lands and real estate by reason of such improvements, such benefits to be determined by the council sitting as a board of equalization. Where they shall find such benefits to be equal and uniform, such assessment may be according to the foot frontage, and may be prorated and scaled back from the line of such improvement according to such rules as the board of equalization shall consider fair and equitable." It is provided by section 180: "In cases where paving has been already done in whole or in part, or contracts have been let therefor under existing laws, in case the lots and real estate abutting upon that part of the street ordered paved as shown upon any such plat or map, are not of uniform depth as well as in all cases where, in the discretion of the board of equalization, it is just and proper so to do, the said board shall have the right and authority to fix and determine the depth to which real estate shall be charged and assessed with the cost of such improvement, without regard to the line of such lots, the same to be fixed and determined upon the basis of benefits accruing to the real estate by reason of such improvement. The provisions of this section in regard to the depth to which real estate may be charged and assessed shall apply to all special assessments except assessments for sidewalks."

The record discloses that the board of equalization found that the lots situated upon each side of the street improvement in question to the center of each adjoining block were benefited by the improvement, and therefore, to that extent, included the nonabutting lots owned by the appellants within the assessment district and assessed them for actual benefits. By section 6, art. IX of the constitution, it is provided: "The legislature may vest the corporate authorities of cities, towns and villages, with power to make local improvements by special assessment, or by special taxation of property benefited." Therefore, it seems clear that the foregoing provisions of the Omaha

charter are not unconstitutional, and from a reading of those sections it is not to be doubted that the board of equalization, in creating the taxing district, and in making the assessments complained of; did not exceed its jurisdiction. It apears that the district court found that the property of appellants was especially benefited to the extent of the assessments of which they complain. That question having been litigated and determined by the district court in favor of the city, and there being sufficient evidence in the record to sustain the finding, a court of review should not set it aside.

The majority opinion holds that the provisions of sections 186 and 198 of the charter, which authorize a relevy of special assessments, and provide for the issuance of bonds to pay for street improvements, require us to place such a construction upon the charter as will prohibit the board of equalization and assessments from assessing property benefited by the improvement to pay for such benefits unless it is included in the ordinance passed and approved by the mayor and city council creating what is called an improvement district. In answer to this declaration it may be said that, at the request of the inhabitants of the city of Omaha, the legislature, in the year 1905, enacted a law creating charters for cities of the metropolitan class; and since that time the authorities of the city of Omaha have paved and improved many miles of its streets, and to pay the costs of such improvements the property actually benefited thereby has been assessed to the extent of such benefits. Unless compelled to do so, we should not reverse the judgment of the district court and adopt a different construction of the charter provisions. To do so will result in great hardship and confusion, will encourage litigation, and the courts will soon be congested with suits by which the many will seek to compel the few to bear the whole burden of paying for necessary public improvements.

In Page and Jones on Taxation by Assessment a clear distinction is made between what is called an improvement

district and a taxing district. An improvement district as such is scarcely mentioned at all in that work, while the whole treatise deals almost exclusively with what is called the taxing district. In section 554 of the work it is said: "If, on the other hand, the legislature has given to commissioners specially appointed for that purpose, power to determine what property is benefited and thus to lay out the assessment district, the city council cannot, by restricting the district to the property contiguous to the improvement, prevent the commissioners from including property benefited by the improvement but not contiguous thereto." It must be observed that the Omaha charter confers the power upon the city council to order the improvement, but withholds the authority from that body to create the taxing district. It confers the power to determine what property is benefited and to assess the same to pay for the improvement upon the board of equalization and assessments. Under a like charter, in *In re Westlake Avenue,* 82 Pac. 279 (40 Wash. 144) it was said: "Under laws 1893, p. 189, ch. 84, providing that all property benefited by a local improvement shall be assessed by commissioners appointed by the court, and imposing on the commissioners the duty to examine the locality where the improvement is proposed to be made and the parcels that will be benefited, the commissioners are authorized to determine what property is benefited, and the court appointing them cannot restrict the assessment to the property embraced in the district prescribed by the ordinance providing for the improvement, or set aside an assessment roll made by the commissioners because they assessed property not within the district created by the ordinance." This rule was also approved in *Bigelow v. City of Chicago,* 90 Ill. 49 (see p. 55) ; *People v. City of Buffalo,* 147 N. Y. 675; *Spencer v. Merchant,* 100 N. Y. 585. In *People v. City of Buffalo, supra,* it was said: "Section 143 provides that the common council shall estimate and fix the amount of money to be raised by local assessment. There is no provision that the common council shall fix the assessment

district. In the absence of any indication that the assessors or other body should possess this power, it might very well be that it would reside with the common council under the grant of legislative power. But section 145 declares that the board of assessors shall assess the amount ordered to be assessed for local improvements upon the parcels of land benefited by the work, act or improvement in proportion to such benefit. The common council under the charter are to determine what local improvements shall be made and the amount to be locally assessed therefor. But the clear implication from section 145, in the absence of any other charter provision on the subject, is that the assessors are both to fix the district of assessment and distribute the tax." From the foregoing it seems clear that the judgment of the district court in construing the sections of the charter in question is supported both by principle and precedent.

It has also been suggested that the form of the bond described in section 198 prevents us from approving the construction adopted by the city authorities and the trial court. Upon this point it may be said that it is the duty of the board of equalization and assessments to determine what property is actually benefited by the improvement, and the final determination of that question fixes the boundaries of the improvement or taxing district; and in case it is deemed best to issue bonds to reimburse the city for the cost of the improvement instead of dividing the tax into ten annual payments, then the board should designate the taxing district by the number adopted at the time the improvement is ordered. This would comply with the requirements of the charter and avoid any confusion or misunderstanding. Upon a careful review of the authorities and of the charter provisions, I am of opinion that the construction given by the district court to those provisions is a reasonable one, and ought to be sustained.

Finally, it appears that the appellants have had their day in court; that the questions presented by them have been fairly litigated and determined; and it follows that

the payment of their just proportion of the cost of the street improvement according to the special benefits accruing to their lots does not deprive them of their property without due process of law. *Chicago, B. & Q. R. Co. v. State*, 47 Neb. 550, 53 Am. St Rep. 557. For the foregoing reasons, the judgment of the district court should be affirmed.

ROSE, J., concurs in this dissent.