Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/16/2024 08:09 AM CST

SANITARY AND IMPROVEMENT DISTRICT NO. 596 OF
DOUGLAS COUNTY, NEBRASKA, APPELLEE, V.
THG DEVELOPMENT, L.L.C., APPELLANT.

SANITARY AND IMPROVEMENT DISTRICT NO. 596 OF
DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLANTS
AND CROSS-APPELLEES, V. THG DEVELOPMENT,
L.L.C., APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed February 16, 2024.    Nos. S-22-688, S-23-134.

1. **Eminent Domain: Verdicts: Appeal and Error.** A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong.

2. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

3. **Eminent Domain: Words and Phrases.** Eminent domain is the inherent power of a governmental entity to take privately owned property, especially land, and convert it to public use, subject to reasonable compensation for the taking.

4. **Eminent Domain: Damages.** In a condemnation action, there are two elements of damage: (1) market value of the land taken or appropriated and (2) diminution in value of the land remaining, less special benefits.

5. **Special Assessments: Improvements: Words and Phrases.** Special assessments are charges imposed by law on land to defray the expense of a local municipal improvement on the theory that the property has received special benefits from the improvements in excess of the benefits accruing to property or people in general.

6. **Special Assessments: Improvements.** The foundation for a local assessment lies in the special benefits conferred by the improvement upon the property assessed, and an assessment beyond the benefit so conferred is a taking of property for public use without compensation and, therefore, illegal.

7. **Constitutional Law: Statutes.** The constitutionality of statutes and statutory interpretation present questions of law.

8. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

9. **Constitutional Law: Rules of the Supreme Court: Statutes: Appeal and Error.** A party challenging the constitutionality of a statute must strictly comply with Neb. Ct. R. App. P. § 2-109(E) (rev. 2023).

10. **Constitutional Law: Rules of the Supreme Court: Statutes: Notice: Appeal and Error.** Neb. Ct. R. App. P. § 2-109(E) (rev. 2023) requires, in part, that a party presenting a case involving the federal or state constitutionality of a statute must file and serve notice thereof with the Supreme Court Clerk by separate written notice or in a petition to bypass at the time of filing such party's brief.

11. **Statutes: Legislature: Intent.** In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

12. **Statutes.** A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.

13. **Statutes: Appeal and Error.** When statutory interpretation is one of first impression, the statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

14. **Statutes.** If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.

15. ____. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

16. **Statutes: Appeal and Error.** To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

17. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
18. **Statutes.** Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.
19. **Statutes: Legislature: Intent.** In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.
20. **Statutes: Intent.** A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.
21. **Assessments: Property: Improvements: Words and Phrases.** The phrase "such exempt property" in Neb. Rev. Stat. § 31-752 (Reissue 2016) refers only to "property by law not assessable"; it does not refer to "property not included within the district defined in the preliminary resolution."
22. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.
23. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.
24. **Jury Instructions: Appeal and Error.** Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.
25. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, but a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion.
26. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

27. **Trial: Expert Witnesses.** Triers of fact are not required to take opinions of experts as binding upon them, and determining the weight to be given expert testimony is uniquely the province of the fact finder.
28. **Motions for New Trial: Appeal and Error.** A motion for new trial is addressed to the discretion of the trial court, whose discretion will be upheld in the absence of an abuse of that discretion.
29. **Attorney Fees.** Attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.
30. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.
31. **Actions: Attorney Fees: Words and Phrases.** A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.
32. **Actions.** Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question.

Appeals from the District Court for Douglas County: Tressa M. Alioth, Judge. Affirmed.

Jason M. Bruno and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for THG Development, L.L.C.

Greg C. Scaglione and Michele E. Young, of Koley Jessen, P.C., L.L.O., for Sanitary and Improvement District No. 596 of Douglas County.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

Two consolidated appeals involve a sanitary and improvement district (SID) and an owner of real estate adjoining the

SID but outside its boundaries. One appeal, from an action to levy a special assessment under the SID statutes,[1] presents a novel question: whether the clause of § 31-752 authorizing a levy where "exempt property" has been "specially benefited" applies only to "property by law not assessable" or also to "property not included within the district." Because we conclude that "exempt property" is synonymous with "property by law not assessable" and that a cross-appeal lacks merit, we affirm the judgment in that appeal. The other appeal, from a condemnation of part of the adjoining property, presents numerous issues lacking merit. Thus, we also affirm that judgment.

## II. BACKGROUND

The instant lawsuits were filed by SID No. 596 of Douglas County, Nebraska (SID 596), against THG Development, L.L.C. (THG). We refer to the first action chronologically, docketed at case No. S-22-688, as the "condemnation case" and the second action, docketed at case No. S-23-134, as the "special benefits case." Although the parties are not precisely the same in both cases, we refer to SID 596 and related parties joined in the special benefits case collectively as "SID 596."

The records in both cases are voluminous. In this section, we summarize the facts and procedural history to the extent necessary to address the assignments of error raised on appeal.

### 1. General Background

SID 596 was formed by a company pursuing a new development near the outskirts of Omaha. The city of Omaha's approval of the development required SID 596 to construct certain infrastructure, including the addition of a traffic signal, expansion of a water main, paving of a street, and construction of turning lanes off a highway. For convenience, we will refer to the required infrastructure as "the improvements."

---

[1] See Neb. Rev. Stat. §§ 31-727 to 31-794 (Reissue 2016 & Cum. Supp. 2022).

THG owned land adjacent to the development but outside SID 596's boundaries. For illustrative purposes only, we provide an excerpt from a plat map received in evidence, showing the affected areas:



The far left side of the map depicts 204th Street, which runs north and south. The two areas near the top, labeled "Proposed West Center Village," depict the development and were included within SID 596's boundaries. SID 596's southern boundary did not extend past what is labeled "Proposed Vinton Street." THG's property was located immediately south of "Proposed Vinton Street."

### 2. Condemnation Case

#### (a) SID 596's Petition and Board of Appraisers' Award

In February 2019, SID 596 filed a petition in county court to condemn ⅓ of an acre of THG's property (the plat map's shaded area) and a temporary construction easement over 2 more acres. In March, the board of appraisers awarded THG $56,390 for the taking. The award stated that the market value of the "Fee Simple Taking" was $39,560 and that the "Short-Term Damages" arising from the temporary construction

easement amounted to $16,830, subject to a reduction of
"$ - 0 -" for "Special Benefits."

### (b) THG's Appeal to District Court

THG timely appealed the award to the district court. As rel-
evant here, THG asserted that the award provided inadequate
compensation. SID 596 did not appeal from the award.

The condemnation case proceeded to a jury trial, where the
issues were the value of THG's property that was taken or
appropriated and any diminution in value of the land remain-
ing. Three aspects of trial are particularly relevant.

First, over THG's objection, the court received evidence
and instructed the jury regarding special benefits purportedly
conferred on THG's remaining property. In pertinent part, the
evidence included testimony from Drew Snyder, a board mem-
ber of SID 596, who opined that THG's property increased in
value by $5 million as a result of the condemnation.

Second, SID 596 adduced testimony from Cheri Rockwell,
a former assistant director of urban planning for the city
of Omaha. Rockwell generally opined that THG's remain-
ing property would be "non-conforming" if THG completed
repairs to cure alleged damages caused by the condemnation.
The court overruled THG's motion to strike her testimony.

Finally, during closing argument, SID 596's counsel sug-
gested that THG was "[c]oncealing" evidence and vaguely
referred to a series of emails. THG immediately objected, and
the court sustained the objection.

### (c) Jury Verdict and Motion
### for New Trial

Following trial, the jury awarded THG a total of $56,390
for the condemnation. The verdict found the value of the
taking of ⅓ of an acre of land to be $39,560 and the value
of the taking of the temporary construction easement to be
$16,830. By a special verdict, it found that THG did not meet
its burden to show a decrease in the fair market value of the

remaining property caused by the taking, and therefore, the jury did not reach the issue of special benefits—the amount of which, under the court's instructions, would have reduced a severance damages award.

THG filed a timely motion for new trial on four grounds: (1) irregularity in the proceedings, (2) orders and abuses of discretion that prevented a fair trial, (3) misconduct of SID 596, and (4) errors of law "excepted to by THG." Specifically, THG challenged the admission of SID 596's arguments and evidence regarding special benefits and costs to restore access to THG's property, the jury instructions regarding special benefits, the allowance of SID 596's expert testimony, and the "inflammatory statement" made by SID 596 in closing argument.

Following a hearing, the court denied the motion for new trial in its entirety. THG timely filed a notice of appeal to the Nebraska Court of Appeals.

### 3. Special Benefits Case

#### (a) SID 596's Complaint and THG's Response

In July 2020, while the condemnation case was pending in the district court, SID 596 filed a separate action there against THG. SID 596's complaint sought a determination that THG's remaining property received enumerated "special benefits" by virtue of the improvements, such that SID 596 could levy a special assessment on THG's property. The complaint expressly stated that THG's property "is outside [SID 596's] corporate boundary." It cited § 31-752 as the legal authority for the assessment.

THG filed an answer, counterclaims, and a third-party complaint. In its answer, THG affirmatively alleged that to the extent § 31-752 "permits or can be interpreted or applied to permit" an SID to specially assess property outside its boundaries, it is unconstitutional. The answer further alleged that the complaint was barred on other grounds.

One of THG's counterclaims is particularly relevant. In its "Eleventh Cause of Action," THG sought declaratory relief regarding § 31-752—the purported basis for SID 596's claim—asserting that if interpreted to allow the assessment outside of SID 596's boundaries, the statute would be unconstitutional. The answer named the Attorney General as a third-party defendant, but he was later dismissed by stipulation.

### (b) Cross-Motions for Summary Judgment

After the jury reached its verdict in the condemnation case, THG filed a motion for summary judgment on SID 596's complaint and "Count 11 of THG's Counterclaim"—its request for declaratory relief. SID 596 moved for summary judgment on causes of action asserted by THG.

### (c) District Court's Rulings

The district court entered an order partially granting and partially denying THG's motion for summary judgment and reserving ruling on SID 596's motion for summary judgment.

In its order, the court granted THG's motion for summary judgment on SID 596's complaint. It reasoned that the language in § 31-752 was ambiguous and then concluded, based on its review of the legislative history, that "when the legislature added the amendment allowing assessment of specially benefitted 'exempt' property, it meant 'tax exempt property' within the district." The court also relied on cases involving other types of improvement districts,[2] in which this court had held that assessment outside an improvement district's boundaries was not available.

In light of its interpretation of § 31-752, the court declined to find the statute unconstitutional. The order did not address THG's other arguments that SID 596's action was barred.

---

[2] See, *Besack v. City of Beatrice*, 154 Neb. 142, 47 N.W.2d 356 (1951) (sewer district); *Drainage District No. 1 v. Village of Hershey*, 139 Neb. 205, 296 N.W. 879 (1941) (drainage district); *McCaffrey v. City of Omaha*, 91 Neb. 184, 135 N.W. 552 (1912) (street improvement district).

In a subsequent judgment, styled as an order, the court overruled THG's motion for attorney fees and disposed of all remaining issues as moot.

SID 596 filed a timely appeal, challenging the court's interpretation of § 31-752. THG filed a cross-appeal, challenging the denial of attorney fees.

### 4. Notice of Constitutional Question

One day after THG filed its appellate brief in the special benefits case, it filed a notice of constitutional question in that case.[3] SID 596 did not file a response. The record indicates that THG served the Attorney General's office with its appellate brief, but there was no response.

### 5. Case Movement and Consolidation

After THG filed its notice of constitutional question, we moved the appeals to our docket pursuant to statutory authority.[4] On our own motion, we consolidated the appeals for purposes of oral argument and disposition.

## III. ASSIGNMENTS OF ERROR

We first set forth SID 596's assignments in the special benefits case. Then we turn to THG's assignments in the condemnation case and in its cross-appeal in the special benefits case.

In the special benefits case, SID 596 assigns, rephrased, that the district court erred in granting THG's motion for summary judgment and dismissing its complaint because, SID 596 asserts, (1) the court erred in determining that § 31-752 was ambiguous and concluding that it "does not authorize SID 596 to seek to have a district court order an owner of property outside of SID 596's boundaries to pay for special benefits conferred by the public improvements installed and paid for by SID 596," and (2) even if § 31-752 is ambiguous, the court erred in reaching that conclusion.

---

[3] See Neb. Ct. R. App. P. § 2-109(E) (rev. 2023).

[4] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

In the condemnation case, THG assigns, rephrased and reordered, that the district court erred in (1) "allowing the mention of, and instructing the jury, regarding 'special benefits'" because, THG asserts, (a) the court lacked jurisdiction over the issue due to SID 596's failure to appeal from the board of appraisers' determination that THG received $0 in "'special benefits'" and (b) there was no basis for a claim of "'special benefits'" as defined under Nebraska law; (2) permitting Snyder to offer valuation testimony; (3) permitting, and refusing to strike, Rockwell's testimony; (4) failing to grant a new trial because, THG asserts, SID 596 improperly used excluded evidence during closing to represent to the jury that THG was "'concealing'" evidence; and (5) denying its motion for new trial.

Finally, on cross-appeal in the special benefits case, THG assigns that the district court erred in denying its motion for attorney fees.

## IV. STANDARD OF REVIEW

[1,2] We set forth two overarching standards of review. A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong.[5] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[6] Additional standards will be set forth at appropriate points in the analysis.

## V. ANALYSIS

We begin with a brief summary of the detailed analysis that follows. In the next sections, we will first review basic

---

[5] *Douglas Cty. Sch. Dist. No. 10 v. Tribedo, LLC*, 307 Neb. 716, 950 N.W.2d 599 (2020).

[6] *Rose v. American Family Ins. Co., ante* p. 302, 995 N.W.2d 650 (2023).

principles of eminent domain and special assessments. We then turn to the parties' assignments of error. We will consider SID 596's claims first, followed by the arguments asserted by THG.

## 1. Law on Eminent Domain and Special Assessments

[3,4] Eminent domain is the inherent power of a governmental entity to take privately owned property, especially land, and convert it to public use, subject to reasonable compensation for the taking.[7] In a condemnation action, there are two elements of damage: (1) market value of the land taken or appropriated and (2) diminution in value of the land remaining, less special benefits.[8]

[5,6] Special assessments are charges imposed by law on land to defray the expense of a local municipal improvement on the theory that the property has received special benefits from the improvements in excess of the benefits accruing to property or people in general.[9] The foundation for a local assessment lies in the special benefits conferred by the improvement upon the property assessed, and an assessment beyond the benefit so conferred is a taking of property for public use without compensation and, therefore, illegal.[10] With these principles in mind, we turn to the parties' claims.

## 2. SID 596's Claims

Both of SID 596's assignments of error challenge the district court's interpretation of the special assessment statute. SID 596 maintains that § 31-752 authorizes an SID to levy special assessments on property located outside its

[7] *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

[8] *Id.*

[9] *Johnson v. City of Kearney*, 277 Neb. 481, 763 N.W.2d 103 (2009).

[10] *NEBCO, Inc. v. Board of Equal. of City of Lincoln*, 250 Neb. 81, 547 N.W.2d 499 (1996).

boundaries. THG generally responds that SID 596's interpretation would render § 31-752 unconstitutional, and it presents several other arguments that SID 596 was barred from asserting any claim of special benefits.

### (a) Standard of Review

[7,8] The constitutionality of statutes and statutory interpretation present questions of law.[11] An appellate court independently reviews questions of law decided by a lower court.[12]

### (b) Notice of Constitutional Question

As a preliminary matter, we address THG's notice of constitutional question. One day after THG filed its appellate brief in the special benefits case, it filed a notice of constitutional question.

[9,10] A party challenging the constitutionality of a statute must strictly comply with § 2-109(E).[13] Section 2-109(E) requires, in part, that a party presenting a case involving the federal or state constitutionality of a statute must file and serve notice thereof with the Supreme Court Clerk by separate written notice or in a petition to bypass "at the time of filing such party's brief." In the majority of our prior cases insisting on "strict compliance," a party entirely failed to file the required notice.[14] But we have also applied strict compliance when the filing of a notice was untimely.[15]

Here, although THG filed a notice, it did so the day after filing its brief. We therefore conclude that THG did not

---

[11] *HBI, L.L.C. v. Barnette*, 305 Neb. 457, 941 N.W.2d 158 (2020).

[12] *Noland v. Yost, ante* p. 568, 998 N.W.2d 57 (2023).

[13] See *State v. Denton*, 307 Neb. 400, 949 N.W.2d 344 (2020).

[14] See, e.g., *id.*, 307 Neb. at 404, 949 N.W.2d at 347. Accord, e.g., *Smith v. Wedekind*, 302 Neb. 387, 923 N.W.2d 392 (2019); *Parker v. State ex rel. Bruning*, 276 Neb. 359, 753 N.W.2d 843 (2008); *State v. Feiling*, 255 Neb. 427, 585 N.W.2d 456 (1998).

[15] See *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994) (notice of constitutional question filed at time of filing reply brief).

strictly comply with § 2-109(E) and decline to address the purported constitutional question.

(c) Interpretation of § 31-752

The crux of SID 596's appeal is whether its attempt to specially assess THG's remaining property—which was located outside SID 596's boundaries—exceeded its authority under § 31-752.

[11,12] Ordinarily, we look no further than the text of the statute. In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[16] A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.[17] Thus, we begin with the text of the statute.

Section 31-752 provides in full:

> The board of trustees or the administrator shall not cause to be assessed for any of the improvements herein provided, property by law not assessable, or property not included within the district defined in the preliminary resolution, and shall not assess property not benefited; *Provided*, in cases when such exempt property has been specially benefited by the improvements, the owner of such property shall pay the district a sum equivalent to the amount the property has been specially benefited, which amount may be recovered by the district in an action against the property owner. If the parties do not agree as to the amount of the special benefits, the amount may be determined by the district court in an action brought by the district for such purpose. The

---

[16] *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 979 N.W.2d 772 (2022).

[17] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

board of trustees or the administrator may find that any part or all of such improvements made are of general benefit to the district except that the board or administrator shall levy special assessments on all lots, parcels, or pieces of real estate specially benefited to the extent of the special benefits to such property. The cost of such improvements shall be paid from the assessments levied against all the property in the district, in the manner provided by section 31-755, or may be paid from unappropriated money in its general fund. The cost of the improvements shall draw interest at the rate of six percent per annum from the date of acceptance thereof by the board or administrator until warrants are issued in payment of the contract price.

SID 596 makes several arguments based on the plain language of § 31-752. In its reading, the phrase "such exempt property" refers to two categories of real estate that are exempt from special assessments: "property by law not assessable, or property not included within the district defined in the preliminary resolution." According to SID 596, when either category of property "has been specially benefited by the improvements," it is subject to special assessment. SID 596 further contends that § 31-752 provides a procedure for special assessment of "such exempt property," which places the burden on the SID to affirmatively seek either an agreement with the property owner or an order of the district court in order to collect payment for special benefits. In support, SID 596 relies on an acquisition of property statute[18] and statutes from other jurisdictions,[19] and it challenges the "purported legislative history."[20]

---

[18] § 31-736.

[19] Fla. Stat. Ann. § 170.01 (West 2021); Kan. Stat. Ann. § 12-6a19 (2022); Wash. Rev. Code Ann. § 35.44.390 (West 2016).

[20] Brief for appellants in case No. S-23-134 at 27.

THG generally responds that a narrower interpretation of § 31-752 is necessary because SID 596's interpretation would render the statute unconstitutional. THG highlights the legislative history and case law cited by the district court, arguing that they limit an SID's authority to levy special assessments to instances where real property is located within the district. Although our reasoning differs, we agree that a narrower interpretation is warranted.

Familiar principles of statutory interpretation guide our analysis. We discuss them in turn.

[13,14] First, when statutory interpretation is one of first impression, the statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[21] If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[22]

Generally speaking, the phrase "exempt property" means property not subject to taxation. For example, Neb. Const. art. VIII, § 2, empowers the Legislature to exempt from taxation certain classes of property. Pursuant to that power, the Legislature has exempted from taxation "[p]roperty owned . . . and used exclusively for educational, religious, charitable, or cemetery purposes," subject to certain exceptions.[23] Property outside improvement district boundaries is not, in that sense, "exempt property." In other words, "exempt property" is synonymous with "property by law not assessable."

---

[21] *Adams Land & Cattle v. Widdowson*, 314 Neb. 358, 990 N.W.2d 542 (2023).

[22] *Id.*

[23] See Neb. Rev. Stat. § 77-202(1)(d) (Cum. Supp. 2022). See, also, *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965) (observing Legislature used same language as appeared in Neb. Const. art. VIII, § 2, in exempting from taxation property owned and used for educational, religious, or charitable purposes).

[15,16] Second, it is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[24] To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[25]

SID 596's interpretation of § 31-752 would effectively eliminate the sentence therein providing that there are two sources of funds for improvements. That sentence states: "The cost of such improvements shall be paid from the assessments levied against all the property *in the district*, in the manner provided by section 31-755, or may be paid from unappropriated money in its general fund." (Emphasis supplied.) This sentence identifies only two sources of payment and omits property located *outside* the SID's boundaries.

[17-19] Third, contrary to settled principles, SID 596's interpretation is premised upon the Legislature's purported intent as deduced from § 31-752 alone. The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[26] But statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.[27] In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular

[24] *Angel v. Nebraska Dept. of Nat. Resources*, 314 Neb. 1, 988 N.W.2d 507 (2023).

[25] *Id.*

[26] *In re Interest of T.W.*, 314 Neb. 475, 991 N.W.2d 280 (2023).

[27] See *id.*

topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.[28]

On appeal, SID 596 appears to concede that the statutory scheme revolves around assessments levied on real property "*in the district*" to fund improvements installed by an SID. It notes, "Indeed of the 31 times the legislature discussed 'property' in the statutes addressing [SIDs], the term was further defined with 'in the district' or similar language 21 times."[29] SID 596's argument suggests that § 31-752 stands alone—in this one instance, the Legislature intended to grant an SID the power and authority to seek payment of special benefits to property located *outside* the SID's boundaries. We are not persuaded.

Nothing in § 31-752 or Nebraska's other SID statutes explicitly states that an SID would have authority to specially assess property outside its boundaries. The Legislature's consistent terminology seems calculated to ensure that the cost of improvements is borne by those having an interest in the real property "*in the district.*" SID 596's interpretation would defeat that purpose.

[20,21] A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[30] Accordingly, we hold that the phrase "such exempt property" in § 31-752 refers only to "property by law not assessable"; it does not refer to "property not included within the district defined in the preliminary resolution."

---

[28] *Id.*

[29] Brief for appellants in case No. S-23-134 at 28.

[30] *Angel v. Nebraska Dept. of Nat. Resources, supra* note 24.

We do not rely upon the legislative history. However, we cite it for interested readers.[31] But, as we have said, the statutory language is clear. SID 596's assignments lack merit.

### (d) Other Purported Bars to Special Benefits Claim

[22] Our statutory interpretation disposes of SID 596's appeal. THG presents several other arguments that SID 596's special benefits claim was barred, but an appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[32] The district court did not err in entering summary judgment in favor of THG in the special benefits case.

### 3. THG's CLAIMS

THG assigns error to multiple aspects of trial in the condemnation case and the denial of attorney fees in the special benefits case. We address each claim.

### (a) Admission of Evidence and Jury Instruction

We read THG's first assignment to challenge, broadly, the court's admission of evidence on special benefits and its submission of that issue to the jury. THG asserts that SID 596's failure to appeal from the board of appraisers' award effectively precluded any claim of special benefits. It also argues that any alleged benefits flowing from the condemnation were "merely general benefits"[33] because, it asserts, the

---

[31] See, 1967 Neb. Laws, L.B. 121; Floor Debate, L.B. 121, 77th Leg. 130 (Jan. 31, 1967); Standing Committee Report, L.B. 121, Urban Affairs Committee, 77th Leg. (Jan. 26, 1967); Committee Statement, L.B. 121, Urban Affairs Committee, 77th Leg. (Jan. 26, 1967); Urban Affairs Committee Hearing, L.B. 121, 77th Leg. 11-12 (Jan. 25, 1967).

[32] *In re Estate of Walker, ante* p. 510, 997 N.W.2d 595 (2023).

[33] Brief for appellant in case No. S-22-688 at 23.

improvements were designed to serve members of the general public equally and did so.

### (i) Standard of Review

[23,24] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[34] Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.[35]

### (ii) Discussion

We are not persuaded that the purported errors unfairly prejudiced or adversely affected a substantial right of THG. Although the jury considered evidence and was instructed on special benefits, it ultimately did not reach that issue in its verdict. On this record, we find no reversible error.

### (b) Expert Testimony

Two of THG's assignments challenge the admission of SID 596's expert testimony.

### (i) Standard of Review

[25,26] An appellate court reviews de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, but a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion.[36] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[37]

---

[34] *In re Estate of Walker, supra* note 32.

[35] *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021).

[36] *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021).

[37] *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023).

### (ii) Snyder

THG contends that Snyder was not an appraiser and did not use any of Nebraska's recognized methodologies to arrive at his valuation of special benefits. SID 596 responds that Snyder was qualified to testify as an expert and that his testimony was relevant. SID 596 further argues that the admission of Snyder's testimony was not prejudicial, because the jury did not reach the issue of special benefits. We agree.

We have already concluded that there was no reversible error in the admission of evidence on special benefits. It necessarily follows that there was no prejudice from the admission of Snyder's testimony.

### (iii) Rockwell

THG claims that Rockwell's testimony was not based upon specialized or firsthand knowledge. THG further asserts that the jury "presumably did not award" the compensation THG sought, only because Rockwell "falsely represented" to the jury a nonconforming use of its property.[38] SID 596 generally responds that Rockwell had the requisite experience to offer her opinion and that weighing the evidence was a matter for the jury.

[27] As SID 596 points out, triers of fact are not required to take opinions of experts as binding upon them, and determining the weight to be given expert testimony is uniquely the province of the fact finder.[39] Here, the jury reasonably could have given more weight to Rockwell's testimony than to evidence presented by THG. THG's argument is speculation, and we see no abuse of discretion by the court.

### (c) Motion for New Trial

THG's two remaining assignments in the condemnation case concern the overruling of its motion for new trial.

---

[38] Brief for appellant in case No. S-22-688 at 30.

[39] *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018).

### (i) Standard of Review

[28] A motion for new trial is addressed to the discretion of the trial court, whose discretion will be upheld in the absence of an abuse of that discretion.[40]

### (ii) Comment During
### Closing Argument

THG's arguments largely focus on one comment made by SID 596's counsel during closing argument. THG asserts that SID 596 deprived it of a fair trial by "insinuating to the jury that THG had 'concealed' emails that the District Court properly excluded from evidence."[41] Relying on the principle that "one cannot unring a bell,"[42] THG argues that counsel's comment was so inflammatory that a mistrial was warranted.

SID 596 responds that even assuming the comment was improper, it was "'an isolated event which hardly permeated the proceedings so as to prevent a fair verdict.'"[43] SID 596 also points out that the case upon which THG relies involved a motion for mistrial, but THG did not move for mistrial here.

We disagree that the lone comment was so inflammatory that it amounted to reversible error. The record shows that THG immediately objected to counsel's comment, and the court sustained the objection. Closing argument then continued, without any similar comments. On these facts, we are not persuaded that the trial court's decision was based upon reasons that were untenable or unreasonable or that its actions were clearly against justice or conscience, reason, and evidence.[44]

---

[40] *Marr v. West Corporation*, 310 Neb. 21, 963 N.W.2d 520 (2021).

[41] Brief for appellant in case No. S-22-688 at 33.

[42] *Id.* at 34 (quoting *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984) (internal quotation marks omitted)).

[43] Brief for appellee in case No. S-22-688 at 25-26 (quoting *Hike v. State, supra* note 7).

[44] See *Carson v. Steinke, supra* note 37.

### (iii) Other Alleged Grounds

THG's other assignment is premised upon assignments that we have already rejected. THG asserts that the "interjection" of special benefits, SID 596's expert testimony, and the comment during closing argument "each independently warranted a new trial."[45] For reasons we have discussed, this assignment lacks merit.

### (d) Attorney Fees

[29] Finally, on cross-appeal in the special benefits case, THG asserts that the district court erred in overruling its motion for attorney fees. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[46] THG claims that attorney fees were appropriate under multiple statutes.

### (i) Standard of Review

[30] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[47]

### (ii) Frivolousness or Bad Faith

[31,32] THG first argues that attorney fees were appropriate under Neb. Rev. Stat. § 25-824 (Reissue 2016). Section 25-824(2) allows a court to award reasonable attorney fees and court costs "against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith." A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to

---

[45] Brief for appellant in case No. S-22-688 at 34, 35.

[46] *Echo Group v. Tradesmen Internat.*, 312 Neb. 729, 980 N.W.2d 869 (2022).

[47] *Id.*

support the litigant's position. The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.[48] Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question.[49]

Resolving all doubts about SID 596's legal positions in its favor, we find that SID 596's argument that it could specially assess property outside its boundaries, although unavailing, was not so unreasonable as to be deemed frivolous or taken in bad faith. Prior to this case, the Nebraska appellate courts had not examined the language in § 31-752 or the scope of an SID's authority to specially assess property within or without its boundaries. The court did not abuse its discretion in denying attorney fees under § 25-824.

### (iii) Eminent Domain Statutes

Alternatively, THG contends that Neb. Rev. Stat. §§ 76-720 and 76-726 (Reissue 2018)—found in the chapter of the Nebraska Revised Statutes addressing eminent domain—permitted an award of attorney fees. We disagree.

The plain language of those statutes does not support THG's argument. Its argument captures a phrase—"in connection with"—from one of our prior decisions.[50] Using that phrase, it argues that the eminent domain statutes applied in the special benefits case because "SID 596 levied special assessments *in connection with* a proceeding initiated by SID 596 seeking to acquire real property by condemnation."[51] That argument lacks merit.

Like the special benefits case here, the proceeding in our prior decision was not a condemnation. We read our prior

---

[48] *City of Omaha v. Professional Firefighters Assn.*, 309 Neb. 918, 963 N.W.2d 1 (2021).

[49] *Id.*

[50] *Simon v. City of Omaha*, 267 Neb. 718, 728, 677 N.W.2d 129, 137 (2004).

[51] Brief for cross-appellant in case No. S-23-134 at 48 (emphasis supplied).

decision to authorize fees only in a condemnation action. To the extent that our prior decision[52] can be read more broadly, we disapprove of that reading. We find no abuse of discretion by the court in declining to award attorney fees under §§ 76-720 and 76-726.

## VI. CONCLUSION

As a matter of first impression, we conclude that § 31-752 does not authorize an SID to levy a special assessment on property located outside the SID's boundaries. Finding no merit in the parties' assignments of error, we affirm the district court's judgments.

Affirmed.

Miller-Lerman, J., not participating.

_____

[52] See *Simon v. City of Omaha, supra* note 50.